COMMONWEALTH, by Insurance Commissioner, *vs.* DORCHESTER MUTUAL FIRE INSURANCE COMPANY.

The St. of 1862, *c.* 181, applies to cases of assessments or calls made by mutual fire insurance companies by authority of statute, but has no application to assessments or calls made by them by virtue of contracts contained in the deposit notes of their members.

WELLS, J. This petition is filed under the provisions of the Statute of 1862, *c.* 181,* praying the court to examine an assessment or call for money, alleged to have been made upon the members of a mutual insurance company by its directors.

For the respondent it is denied that the call for money is one which comes within the meaning of the statute.

The vote of the directors, after reciting that losses had occurred to a large amount, " thereby exhausting the cash assets of said company," and that they considered it " to be their duty as the representatives of the remaining policy holders, to cause to be collected and turned into cash a portion of the absolute funds belonging to said company, to protect them the more thoroughly against future losses," was as follows : " That the treasurer be and he is hereby ordered and instructed to collect in cash 85 per cent. of all outstanding deposit notes."

At that time the claims against the company for losses by fire exceeded the cash assets by the sum of $4671.43. Eighty-five per cent. upon all the deposit notes held by the company would be about $200,000.

The question is thus distinctly presented, " What are the rights of a mutual insurance company over the deposit notes of its members ? "

---

* St. 1862, *c.* 181, § 1. Whenever the directors in any mutual fire insurance company shall make an assessment, or call on its members for money, or shall by vote determine that there exists a necessity for such assessment or call, they or any person interested in the company as an officer, policy holder or creditor, may apply to the Supreme Judicial Court for any county, by a petition in the nature of a bill in equity, praying the court to examine said assessment or call, the necessity therefor, and all matters connected therewith, and to ratify, amend or annul the assessment or call, or to order that the same be made, as law and justice may require.

The deposit note is a credit given by the company to the assured for a part of the consideration of the contract of insurance. It is an investment of a part of the premium, constituting the reserved capital of the company. In a few instances prior to 1835, special acts of incorporation made provision for deposit notes. Sts. 1826, *c.* 83; 1834, *c.* 34. But generally those acts contained nothing to control the corporation in regard to the form in which the premium or consideration should be received. In some cases the entire amount was required to be paid in money. But the general practice was undoubtedly to give credit for the larger portion, and to distinguish between the cash premium and the remainder of the consideration; the former being applicable to the ordinary current expenses, and the latter being held as reserved capital. One thus came to be designated exclusively as "premium," the other as "deposit." The deposit is just as completely within the control of the corporation as the cash premium; except when and so far as it may restrict that control by the terms of its contracts with its policy holders or members. Both are matters of contract, and all rights and liabilities concerning them rest in contract, and must be ascertained from the contract; general provisions of by-laws and statutes aiding, of course, in the interpretation. The statute does indeed require that, if deposit notes are taken, they shall be of the same date as the policy and " shall not exceed double the amount paid as cash premium." Gen. Sts. *c.* 58, § 58. But there is no provision of law requiring that deposit notes shall be taken for any part of the consideration; or regulating in any manner the form of such notes, or the conditions of their payment.

Beyond the premium and deposit, or the price for the insurance as fixed by the contract, the statutes superadd, for the protection of the insured, a further liability to be enforced by assessment. It is a contingent liability, somewhat analogous to that which is imposed, in certain cases, upon stockholders of other corporations, to make good the deficiency of capital that has been wasted or lost. The same amount of additional contribution is often provided for by a stipulation in the policy. But the statute liability is independent of any such agreement. How far the

agreement, when so made, might be enforced independently of the statute, we have not now to consider.

It must be manifest that the two funds, or sources of indemnity, thus provided, are of entirely different character, and that questions arising upon assessments are essentially affected by the difference. We apprehend that much of the apparent inconsistency in the reported cases upon the subject, has arisen from overlooking the distinction.

Prior to 1835, assessments were provided for with especial reference to enforcing the contingent liability. The form commonly used in special charters was substantially this : " In case any member shall have a just claim upon the corporation exceeding the amount of their then existing funds, the directors shall, without delay, assess such sum as may be necessary on the members, in proportion to the amount of their premiums and deposits, but not to exceed double the amount of such premiums and deposits." Sts. 1830, *c.* 50, § 4 ; 1832, *c.* 14, § 4 ; 1833, *c.* 66, § 3. In some cases the language used was more explicit, to wit, that no member " shall be held to pay, by way of assessments, more than two dollars for each dollar by him advanced as premium and deposit." Sts. 1827, *c.* 60, § 4 ; 1797, *c.* 67, § 4, 2 Special Laws, 212.

If the funds of the corporation were all in the deposit notes of its members, and the directors should neglect to collect those, a claimant might be embarrassed or defeated in his efforts to obtain satisfaction. To remedy this difficulty, or perhaps only to make explicit what was before ambiguous, the Rev. Sts. *c.* 37, § 31, following the St. of 1835, *c.* 147, provided that whenever such claim exceeds " the amount of their then existing funds, exclusive of deposit notes given by the members, the directors shall forthwith assess such sum as may be necessary to pay the same, upon the members."

In the Gen. Sts. *c.* 58, § 48, the words " exclusive of deposit notes " are omitted, but in defining the limit of liability the words " in addition to his premium and deposit " are added, implying that the assessment contemplated might include the deposit as well as the contingent statute liability. We are inclined to the opinion, therefore, that the change of phraseology in the General

Statutes does not indicate a change in effect from the previous provisions of the Revised Statutes, in this particular; and that the General Statutes as well as the Revised Statutes make it the duty of directors of a mutual insurance company to lay an assessment upon the members, for payment of just claims against the company, unless they shall provide means of payment otherwise, either from present funds or by collection of the deposit notes. And this duty is enforced by the peril of personal responsibility for the debt if they neglect it.

When there are deposit notes unpaid, such an assessment will doubtless apply first upon those notes. But so far as the collection of the funds due upon those notes is concerned, the statute is not the only authority or source of right in the company by which it may be effected. It is mandatory merely, and supplementary to the rights of the company derived from the terms of the note itself, or of the contract of which the note forms a part. The purpose of the statute is to secure the rights of the creditor to enforce payment, and although the terms of the statute must be resorted to, to ascertain the extent of authority conferred and the conditions of its exercise, in cases which depend solely upon the authority there given, yet there is nothing in the terms of the statute which can be construed to exclude the exercise of any right derived from contract to enforce payment of deposit notes in any mode and to any extent. The purpose of the statute is effected when the right of the creditor is satisfied. To that extent it is mandatory. Beyond that it is silent. It does not attempt to control or restrict the exercise of rights or powers conferred by the contracts of the parties. This doctrine is distinctly announced in *Long Pond Insurance Co.* v. *Houghton,* 6 Gray, 77; *People's Insurance Co.* v. *Allen,* 10 Gray, 297; *Appleton Insurance Co.* v. *Jesser,* 5 Allen, 446; and implied in *Bay State Insurance Co.* v. *Sawyer,* 12 Cush. 64.

But in *People's Equitable Insurance Co.* v. *Babbitt,* 7 Allen, 235, this distinction is entirely overlooked, and the right to collect a portion of the deposit note, by assessment, is treated as if derived wholly from the statute. This, it is said, " defines the object and purpose of such an assessment," and " limits the au-

thority of the directors in all such proceedings." It is consequently held that the only purpose for which it can be permitted is to raise money sufficient in amount to discharge outstanding obligations; and accordingly two assessments of ten per cent. each, upon deposit notes, were declared void, for the reason that "the aggregate of the sums assessed upon the members was more than double the amount of the existing deficiency then ascertained."

The learned judge delivering the opinion adds: "The company is not, nor is it intended in relation to such an association that it should be, empowered in this manner and by such means to accumulate a fund, either to establish and confirm its credit, or to enlarge or facilitate its operations, by securing an increased confidence in its ability to fulfil its engagements, or to guard against possible contingencies or future liabilities. The directors cannot therefore make any assessment upon the members except for the single purpose of providing means for the payment and discharge of existing obligations."

We know of no source from which to learn what was intended in relation to such associations but the statutes of the Commonwealth, and we find in them no indication of any purpose thus to restrict either individuals or associations in the right to regulate their own affairs and mutual relations by their mutual contracts.

While we may concede the general correctness of the views above quoted, as applied to an authority derived solely from the statute, we feel bound to declare our decided disagreement with them so far as they deny the right of members to confer upon the association by contract, and of the association to exercise by virtue of such contract, the powers requisite to determine the necessity and amount, and to apportion, by assessment, the contribution which each shall make to a common fund from their several obligations. With all due respect therefore to the judgments of our predecessors, and a desire to observe the maxim, "*stare decisis*," when no important principle is sacrificed thereby, we must refuse to be bound by that decision, and hold the same to have been erroneously adjudged.

The case of *Traders' Insurance Co.* v. *Stone*, 9 Allen, 483, was decided wholly upon the authority of that last mentioned. In

neither was any reference made to the terms of the contract or the by-laws of the corporation as having any bearing upon the rights of the plaintiff.

The nature of the contract of mutual insurance, and the relations thereby established between the members of the company, are such as to make it reasonable that collections upon the deposit notes should be required of all members in like proportions. This principle is recognized by the general practice of mutual insurance companies, and the apportionment for that purpose is usually called an assessment. Dealing with them as assessments, the court has sometimes set them aside, when found to be unreasonable or to violate some principle essential to an assessment. But the basis of recovery of the amount of the note or any portion of it, and the test of the validity of an assessment apportioning it, must be found in the contract, except so far as it is referred to the statute by the terms of the note or the by-laws of the company. Those may be in such form as to restrict the right of the directors to call in any part of the deposit notes otherwise than by means of assessments conducted solely by the authority and in accordance with the directions of the statute. We do not doubt the power of the Legislature to restrict the mode or extent and purposes of all collections by the directors, or to regulate them in any respect, but we do not find that any such interference or control has been attempted, and it is beyond the province of the court to do it.

The case of *Atlantic Insurance Co.* v. *Fitzpatrick*, 2 Gray, 279, was an action to recover the amount of assessments upon a note payable to a foreign mutual insurance company " in such portions and at such time or times as the directors of said company may, agreeably to their act of incorporation and by-laws, require." The assessment and note were produced, but the plaintiff neglected to offer proper evidence of the act of incorporation and by-laws, " so that it might appear that their provisions had been substantially complied with, in making the assessments," and the action failed; the court holding the burden, in this respect, to be upon the plaintiff. As a mere statute liability under the laws of another state would not be enforced in Massachusetts, the case is resolved entirely into a question of liability by contract.

In *Jones* v. *Sisson*, 6 Gray, 288, upon a similar note, apportioned by an assessment in New Hampshire, the court sustained the plaintiff's right to recover upon the contract.

In *Marblehead Insurance Co.* v. *Hayward*, 3 Gray, 208, an assessment upon a deposit note was held to be " a departure from the provisions of the statute," and invalid for the reason that it was laid upon a part only of the deposit notes liable to be assessed. The report does not disclose the form of the note, or of the by-laws of the company, and the only question considered or presented appears to have been the regularity of the assessment as such.

The decision in *People's Equitable Insurance Co.* v. *Arthur*, 7 Gray, 267, stands upon the same ground, and was made upon the authority of the one last referred to. The note was payable " in such portions and at such time or times as the directors of said company may, agreeably to their act of incorporation and by-laws, require." A large number of policy holders were omitted from the assessment, and it was not shown that the company was legally entitled " to divide their policies into classes." The issue in the case was distinctly upon the validity of the assessment.

It is another and different question whether recovery can be had upon a note according to an apportionment made in pursuance of its terms and the by-laws of the company, without reference to the authority contained in the statute. As already suggested, the statute does not forbid it, nor is such apportionment and collection by simple vote or order of the directors inconsistent with any principle or policy of the law which we have been able to discover. In *Long Pond Insurance Co.* v. *Houghton*, 6 Gray, 77, recovery of the entire notes was had upon a vote of the directors that all the deposit notes be collected, " and in addition thereto, that an assessment be laid " on each member, " of a sum equal to an hundred and thirty per centum of the amount of his premium and deposit notes," even from one against whom the assessment was not sustained, although made for losses occurring within the same period.

In *Shawmut Insurance Co.* v. *Stevens*, 9 Allen, 332, the directors " passed an order for the collection of all the deposit notes

and other absolute funds," and a recovery was had accordingly, although the point was distinctly taken in defence, that an assessment was necessary for that purpose. The note was payable "in such sum or sums as may be called for by a vote of the directors of said company, or by the treasurer of said company."

In this case the promise contained in the notes is to pay "on demand such sum or sums of money, not exceeding the cash premium paid hereon, and in addition thereto, as the directors may from time to time order or assess." The by-laws require payment "at such times and in such portions as the directors shall deem requisite to pay the expenses and losses of the company." The directors are made the common agents of the members and the corporation, to determine what is requisite in this respect. *Bay State Insurance Co.* v. *Sawyer*, 12 Cush. 64.

There is no express reference to the statute, and the language does not indicate an intention to confine the directors to the exercise of a mere power under the statute, with no discretion as to the amount to be called in at any one time.

We are of opinion that, while the statute does apply to ·the liability of members upon deposit notes as well as to their contingent liability beyond the notes, so far as to enable creditors to require their collection when necessary, it does not apply so as to deprive the directors of authority conferred on them by the by-laws of the corporation and the terms of the contract; and further that these, in the present case, gave the directors authority to collect the notes by an order or vote and demand, independently of the statute, and without justifying such collection by the formal statements required for an assessment under the statute authority, by Gen. Sts. *c.* 58, § 54. The custom of this corporation was to collect one half of the premium in cash. The fund thereby raised had been dissipated by losses, and an excess of debt created. We do not see that the amount of the call is so inconsistent with the established course of business of the company as to show that it was not made in good faith, and in a proper and judicious course of administration of its affairs.

The St. of 1862, *c.* 181, under which this application is made, contemplates assessments or calls made by authority of statute,

and requiring the preparation of the statements mentioned in Gen. Sts. *c.* 58, § 54. The directors are required, as a part of the proceedings, to " set forth the claims against the company, its assets and all other facts and particulars appertaining to the matter. The court proceed " to examine the assessment or call, or the necessity therefor, and all matters connected therewith ; " and " may refer the apportionment. or calculation to any competent person ; " and in all cases " may control the disposition of the funds collected under these proceedings." The St. of 1863, *c.* 249, § 3, provides that the matter shall be referred to an auditor, who shall " report upon the correctness of said assessment or call, and all matters connected therewith."

The respondent having made this call, and relied for collection thereof entirely upon its contracts with .the several parties upon whom it is made, and upon its own by-laws, by which all are bound as members of the company, and those being sufficient for the purpose without resort to the statute proceeding, there is no such call or assessment as requires the examination or supervision of the court, and the application must be *Dismissed.*

*W. G. Colburn,* Assistant Attorney General, for the Commonwealth.

*G. O. Shattuck & O. W. Holmes, Jr.,* for the defendant.