CLARENCE B. WARDLE, RECEIVER, ETC., V. GERTRUDE TOWNSEND.

*Mutual fire insurance company—Constitutional law—Title of act—Receiver—Assessments to pay liabilities—Responsibility of members—Costs.*

1. A title to an act which reads, "An act to provide for the incorporation of mutual fire insurance companies, and defining their powers and duties," is sufficient to embrace, without particular mention, provisions for winding them up in case they neglect to perform their duties or exercise their powers, and embraces in the object expressed examinations by the Commissioner of Insurance, the appointment of a receiver, and the assessment of policy-holders to pay liabilities and expenses.

2. A receiver of a fire insurance company organized under Act No. 82, Laws of 1873, derives his authority to make assessments directly from the statute, and, while proper to ask the advice of the court, of which he is an officer, on an *ex parte* petition, the order obtained confers no additional authority, and, if he acts beyond or in contravention of the statute, his acts may be questioned the same as if no such order had been made.

3. Such assessments are not conclusive upon the members, and in a suit to recover same the statute makes the assessment *prima facie* evidence of the regularity and correctness of all proceedings, and of a right of recovery.

4. The underlying principle of *all* insurance is *complete* idemnity for all losses insured against, and is as applicable to *mutual* as to *stock* companies; the object of the statute authorizing the formation of the former being to substitute mutual responsibility for capital, and to limit the *price* of insurance to the actual cost of indemnity against *all* the risks of *all* of the members.

5. Parties taking insurance in a mutual company are presumed to do so with a full understanding of all the liabilities they assume by so doing, including that of making good *deficiencies* arising by reason of the non-payment of assessments by irresponsible members, or from other causes; and it is proper and necessary for a receiver of such a company to assess, in the first instance, a sufficient sum to pay all liabilities and expenses, and in ascertaining this amount he is invested with a liberal discretion, which will not be interfered with unless abused; and the Court

75 MICH.—25.

cannot say that an assessment of 100 per cent. in excess of the liabilities is not warranted, and made in good faith, without evidence that it is *unreasonable* and *excessive*.

6. In a suit by the receiver of a mutual fire insurance company organized under Act No. 82, Laws of 1873, to recover an assessment, costs follow the judgment, regardless of its amount.

Error to Ionia. (Smith, J.) Argued April 18, 1889. Decided June 21, 1889.

Assumpsit by the receiver of a mutual fire insurance company to recover an assessment. Defendant brings error. Affirmed. The facts are stated in the opinion.

*A. V. Dodge,* for appellant.

*S. V. R. Trowbridge* (*McGarry & Ford,* of counsel), for plaintiff.

CHAMPLIN, J. Clarence B. Wardle was appointed receiver of the Home Mutual Fire Insurance Company, of Ionia, Clinton, and Montcalm counties, a corporation organized under Act No. 82, Laws of 1873.

The defendant took insurance in this company, and received five policies, of the following dates: April 18, 1879; September 8, 1879; March 25, 1882; another one of the same date; and one August 25, 1882.

The company had suffered losses which it neglected to pay; and on the nineteenth of February, 1884, the Commissioner of Insurance, acting under the authority conferred by section 15 of said act, made an examination into its affairs, and found and determined that the company was insolvent, and took proceedings under the statute to wind up the business of the company.

On the thirtieth day of April, 1884, the commissioner filed his petition, under section 15 of the act, and thereupon such proceedings were had that afterwards, and on the twenty-sixth day of May, 1884, the plaintiff, Clarence B. Wardle,

was appointed receiver, and qualified. At the time he was appointed there were losses and liabilities of the company amounting to $22,000, not including the expenses of the receivership, and there were many suits pending to recover losses unliquidated and undetermined. Many former policyholders had left the country, many others were entirely irresponsible, and of the others a large part had surrendered their policies.

The receiver proceeded to assess upon all the members and persons insured in the company an assessment for the purpose of paying the liabilities and expenses; and, in determining the aggregate amount which it was necessary to assess, the receiver took the advice of the circuit court, filing therein a petition, in which he represented that the debts of the company, and interest on the same, amounted to about the sum of $25,000, not including some unadjusted claims on which payment may be enforced; that many of the debts were unliquidated, and it was impossible for him to know what would be paid on the same; that, owing to the way the books had been kept, there might be names in said books which should have been dropped from the same, by the surrender of the policies or the sale of property or otherwise; that the assessment should be large enough to cover all contingencies, avoiding, if possible, the necessity of a second assessment, and the expense thereof, and that in his opinion $50,000 should be assessed to raise the said sum of $25,000, and that he believed such assessment would not yield more than the sum of $25,000, which belief was founded on the knowledge he had in regard to the accounts of the company and the condition of its affairs; that it was impossible to state what his expenses would be, or how long it would take to wind up the company, or how many policy-holders would pay or how many would contest their assessment.

Upon hearing the petition *ex parte*, the circuit court made a formal order granting the prayer of the petitioner, and

authorizing him to assess upon the policy-holders $50,000 for the purposes stated in the petition. Thereupon, in accordance with said act and the order, the receiver did make such assessment. The amount assessed against each member of the company was in proportion to the amount of insurance of such member, and his interest in the company, in no case assessing any policies for losses which occurred while such policies were not in force, but holding members liable for all losses which occurred while they were members of such company.

The circuit court found as a fact that, in the judgment of the receiver, after a thorough and careful examination of and inquiry into the affairs of the company, and after collecting from the most available parties individual assessments thereunder, the said assessments when collected to the fullest possible extent will no more than realize the amount required to pay the actual liabilities of said company, and the reasonable expenses of said receivership.

In making the assessment, the receiver gave notice, as required by section 17 of said act, by publishing notices in the Ionia Sentinel, Clinton Republican, and Montcalm Herald, weekly newspapers printed in said counties, once a week for six successive weeks, wherein and whereby the aggregate amount assessed by said company was stated.

The foregoing statement contains substantially the facts found by the court.

The bill of exceptions contains only the defendant's requests for findings of law, and the findings of fact and law by the court.

Defendant's counsel requested the court to find the law as follows:

"*First.* That Act No. 82 of the Session Laws of 1873, entitled 'An act to provide for the incorporation of mutual fire insurance companies,' etc., is unconstitutional and void, for the following reasons:

"1. The subject of the act embraces more than one object.

"2. The object of the act is not expressed in the title.

"3. It purports to authorize 'suits to be commenced in the circuit court for less than one hundred dollars.'

"4. It purports to authorize the service of process and the bringing of suits against the residents of other counties.

"*Second.* The assessment alleged to have been made by the plaintiff in this cause is excessive and void:

"1. Because the act in question does not authorize the levying of an assessment for overlays.

"2. Because, if it authorizes an assessment for overlays, the overlay covered by this assessment is grossly excessive, and therefore void.

"3. Because the order of the court assuming to authorize such assessment, being *ex parte*, is void.

"4. Because such assessment is made upon the basis that all persons insured, and members of said company at the time of each loss, were liable to assessment for all such losses, regardless of the fact that some of said policies had been surrendered.

"*Third.* The amount claimed by the plaintiff in his said declaration being less than one hundred dollars, judgment for costs cannot be rendered in favor of the plaintiff and against the defendant."

The circuit judge found the following as his conclusions of law:

"As to the first proposition of law submitted, I find it is not well taken; that the act referred to is not unconstitutional for any of the reasons stated.

"That the second proposition is not well taken; and the assessment was not, under the circumstances shown or admitted, excessive or void; and that the order to make the assessment could legally be made *ex parte;* and the assessment was made on a proper legal basis.

"And, further, the statute expressly authorizes costs to plaintiff, even though the recovery be less than one hundred dollars; section 17 of the act referred to expressly providing that 'upon such suit, such assessment shall be *prima facie* evidence of the regularity and correctness of all proceedings up to and including the assessment, and of the receiver's right to recover the amount therein, with costs.'"

And he directed a judgment in favor of the plaintiff for $32.84, with costs of suit, to be taxed.

There is no valid constitutional objection to the title of the act.

A title to an act which reads—.

"An act to provide for the incorporation of mutual fire insurance companies, and defining their powers and duties,"—

Is sufficient to embrace, without particular mention, provisions for winding them up in case they neglect to perform their duties or exercise their powers. The examination by the Commissioner of Insurance, the appointment of a receiver, and the assessment of policy-holders to pay liabilities and expenses, are all necessarily incident to the object expressed in the title. There are no decisions of this Court which give countenance to the idea that subjects so germane to the act of incorporation should be expressed in the title. *Tolford v. Church,* 66 Mich. 431 (33 N. W. Rep. 913); *Attorney General v. Amos,* 60 Id. 372 (27 N. W. Rep. 571). Nor is the body of the act in conflict with the constitutional provision that no law shall embrace more than one object, which shall be expressed in its title. The object is. to provide for the incorporation of mutual fire insurance companies, and to define their powers and duties; and each provision of the enactment has reference to this object.

It is also claimed, in the brief of counsel for defendant, that the act is unconstitutional in providing for the appointment of a receiver without any adequate notice to the persons whose interests are to be affected by his appointment. This position is taken for the first time in this Court. It is not covered by his requests to the court to find on matters of law, and there is no assignment of error covering this point. We shall not pass upon the question, were it proper to do so upon this record, as the facts are not sufficiently stated to enable us to determine whether there was an appearance, and the parties were heard upon the motion or not.

The statute does not contemplate that the receiver shall

obtain an order of the court to authorize him to make the assessment. He derives his authority directly from the statute. It is not, however, improper for him to ask the advice of the court, upon a showing by petition filed and heard *ex parte*, as he is an officer of the court; but the order confers no additional authority, and, if he acts beyond or in contravention of the statute, his acts may be questioned by parties injuriously affected by his unwarranted proceedings, the same as if the order of the court had not been obtained.

Assessments made *ex parte* by a receiver, or by a board of directors, are not conclusive upon the members. If not voluntarily paid, and a suit is brought to recover them, the statute makes the assessment *prima facie* evidence of the regularity and correctness of all proceedings up to and including the assessment, and of the receiver's right to recover therein the amount assessed, with costs. The question, therefor, whether the assessment against defendant was excessive, was open to the defendant, but the burden of proof was upon her to overcome the *prima facie* evidence made by the assessment itself.

The defendant's counsel insists that the assessment of $50,000 to meet liabilities of the company of $22,000, and the expenses of the receivership, exceeded all bounds of moderation and propriety, and invited the litigation it purported to provide against; that such assessment is rank injustice to the persons who are financially responsible, and could not have been contemplated by them when they entered into their contract of insurance; that the contract does not contemplate, and should not be construed or interpreted to include, the payment of the deficiencies of members who failed to pay.

The underlying principle of all insurance is complete indemnity for all losses insured against. This principle is as applicable to mutual as to stock companies. The statute providing for the incorporation of mutual insurance com-

panies provides a scheme whereby a number of persons may become insurers of each other, so that each person insured will be entitled to full indemnity against loss to the amount of his insurance.    The object of the statute is to substitute mutual responsibility for capital, and to limit the price of insurance to the actual cost of indemnity against all the risks of all the members.    *Bangs v. Gray,* 12 N. Y. 480; *Savage v. Medbury,* 19 Id. 34.

To this end the statute (section 17) provides that, in case of insolvent companies, the receiver shall—

"Assess upon all of the members and persons insured in such company such sums of money as will, in the aggregate, be sufficient to pay all the losses and liabilities of said company, together with the services and expenses of such receiver, according and in proportion to the amount of their insurance or interest in such company."

The rights and obligations of the individual members are mutual, and each sustains a double relation to the corporation.    As an assured he is entitled to be indemnified for his loss insured against by the corporation.    As a member of the corporate body he, in consideration for this indemnity, agrees with the corporation, and with each member of the corporate body, to pay his just share or proportion of all losses, so that each member shall receive the same indemnity, and shall also pay his share of the expenses.    Each member is authorized to bring suit upon his claim for losses, if payment is withheld more than 60 days after it shall have become due.

Parties taking insurance in a mutual company are presumed to do so with a full understanding of the liabilities they assume by so doing.    It follows from the agreement that each member shall be paid the full amount of his loss insured against; that if, by reason of the irresponsibility of a member, or for other cause, the assessment laid upon him is uncollected or uncollectible, the responsible members must

make good the deficiency; otherwise losses never would or could be paid in full where one or more members fail to pay, and the assessment is uncollectible, and every company would necessarily be insolvent at the first failure to collect. Hence it is that, in making assessments, investigation must be made, and allowances included, for non-payment by irresponsible members, as well as for the expenses of the proceedings. The assessment must be laid upon all the members liable for the loss, whether solvent or insolvent, in accordance with the proportion directed by the statute; and if only a sum equal to the liability and expenses were assessed, and some neglected to pay because insolvent, another assessment would have to be made to make up the deficiency; and if just the amount of the deficiency were again assessed, an insufficient amount would be realized for the same reason; and so the assessments might go on *ad infinitum;* and still there would remain a deficiency owing to the failure of the irresponsible ones to pay. Such a construction of the statute would be ridiculous. No person suffering a loss, where one or more members were irresponsible, would ever receive full indemnity; and the solvent members would be harassed, and their means be eaten up, with useless expense and litigation.

It is therefore proper and necessary for the receiver to assess a sufficient sum in the first instance to pay all liabilities and expenses; and, in ascertaining this amount, he is invested with a liberal discretion, which will not be interfered with unless abused. *Jones v. Sisson,* 6 Gray, 296.

In support of the claim that the assessment in this case is excessive, counsel for defendant cites us to the case of *People's Insurance Co. v. Babbitt,* 7 Allen, 235. In that case the court held that the board of directors were vested with discretionary authority in fixing the rate at which members were to be assessed, with a view to raising the amount necessary to supply the existing deficiency of funds. It held that the actual amount so required could be ascertained and deter-

mined with exactness and certainty; and Merrick, J., in his opinion says:

"But as there must be expense incurred in the collection, and losses may be sustained in consequence of the insolvency of members assessed, all of which is unavoidably contingent and uncertain, proper allowances may be made for the failures which may be expected to result from these or other unforeseen causes; and if such allowances are reasonable in amount, and consistent with good faith on the part of the directors, they will not vitiate the assessment. * * * But, if these reasonable limits are disregarded and transcended, the directors will have acted without warrant or authority, and any assessment so made by them will be illegal and void."

In that case two assessments of 10 per cent. each were laid. Upon the first the assessment was $11,414, to meet a liability of $4,666.81, and the other was an assessment of $11,732.66, to meet a liability of $5,616.68. Upon the testimony of experts examined as witnesses it was shown that at least 50 per cent. of the amount assessed might be expected to be collected under circumstances the most unfavorable of any to which they had adverted, and the court said:

"No circumstances are shown to justify the great excess in the amount attempted to be raised by the assessments which the plaintiffs now seek to enforce, and there is therefore no principle upon which they can be upheld or maintained."

This case, so far as it restricted the right to assess members in a solvent company to a sum sufficient to pay existing liabilities and expenses, and denied the authority to lay an assessment for the purpose of accumulating a fund in a solvent company, is overruled by the case of *Com. v. Dorchester Insurance Co.*, 112 Mass. 145. As applied, however, to an insolvent corporation, whose affairs are being wound up by a receiver, the principles laid down for which assessments may be made are correct. *Traders' Insurance Co. v. Stone*, 9 Allen, 483.

In Massachusetts and other states where the question of excessive assessments has arisen, the burden of showing the reasonableness of the assessment, and the regularity of the proceedings upon which it is based, is upon the party seeking to enforce it; but under our statute, as before stated, the burden of proof is upon the party who contests the assessment to show its invalidity. The presumption is in favor of the action of the receiver, and we cannot say that an assessment in excess of the liabilities of 100 per cent. is not warranted, and is not made in good faith, without evidence which shows that such assessment is unreasonable and excessive. There is no testimony in the record, and no finding of the court, which tends to establish the position contended for by the defendant. We have no means of ascertaining how many of the members are responsible, and how many are not, nor the amount of insurance.

This is an insolvent company, and there must be some (but what proportion we are not informed) against whom assessments cannot be enforced ; and it may be, for all that appears in this record, that the assessment is reasonable and proper. It is the duty of the receiver to endeavor to collect the assessment against every member, but to what extent he must pursue his legal and equitable remedies is not before us for decision.

The statute makes every assessment a lien upon the property insured to the amount of the assessments, costs, and interest due thereon. Section 12. How and by whom such lien should be enforced are interesting questions, which we are not called upon at present to decide.

The assessment appears to have been made upon the proper basis. The court finds that the amount assessed against each member was in proportion to the amount of insurance of such member and his interest in the company, in no case assessing any policies for losses which occurred while such policies were not in force, but holding members liable for all

losses which occurred while they were members of such company. This is the basis established by the statute, and is also the contract of the parties composing mutual insurance companies in this State. *Russell v. Berry*, 51 Mich. 287 (16 N. W. Rep. 651); *Bangs v. Gray*, 12 N. Y. 477.

Costs were properly awarded to the plaintiff, although the sum recovered was only $32.84.

The statute authorizes the receiver to bring his action to recover assessments in the circuit court without regard to the amount claimed, whether more or less than $100, and to recover costs. If he could not recover costs unless he recovered a judgment of $100, but must pay costs if his recovery is less, we should have the absurd spectacle of a recovery, by a receiver, of amounts varying from a few dollars up to one hundred, and being obliged in a majority of cases to pay twice or thrice the amount of costs which he recovers judgment for ; and, as this is part of the expenses of the receivership, he would then make another assessment to cover these expenses, which he might again sue in the circuit court, and recover a judgment in his favor for the assessment, and a recovery would be had against him for costs; and so he might keep on until the resources of the members were exhausted, at the game of shuttle-cock and battle-door,— paying and recovering costs.

The question is foreclosed by the case of *Bacon v. Clyne*, 70 Mich. ——(38 N. W. Rep. 207), to which we adhere.

The judgment of the circuit court must be affirmed.

SHERWOOD, C. J., CAMPBELL and LONG, JJ., concurred. MORSE, J., did not sit.