THE IONIA, EATON & BARRY FARMERS' MUTUAL FIRE INSURANCE COMPANY v. WILLIAM B. OTTO.

*Mutual fire insurance companies—Withdrawal of member—Liability for subsequent assessments.*

A member of a mutual fire insurance company who surrenders his policy, under a clause of the charter providing therefor on the payment of his proportion of all assessments to which the company is *then* liable, remains liable to assessment for such obligations as might lawfully be made the subject of assessment at the time of such surrender, but not for losses arising subsequently from failures to collect, or from any other cause; citing *Insurance Co. v. Spaulding,* 61 Mich. 77.

Error to Eaton.   (Person, J., presiding.)   Submitted on briefs June 9, 1893.   Decided July 26, 1893.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Huggett & Smith,* for appellant.

*Ellis, Nichols & Miller,* for plaintiff.

HOOKER, C. J. The defendant took a policy of insurance in the plaintiff company on January 5, 1884, and remained a member until November 16, 1889, when he surrendered it for cancellation. The entry of cancellation was made in the company's books upon the same day. At this time, defendant had paid his proportion of all assessments previously made, which covered no items after December 31, 1888. On January 15, 1890, an assessment was made to cover losses and expenses of 1889, which defendant paid. Subsequently, another assessment was made, as follows: For a deficiency in 1887, arising from error, mistake, or miscalculation in the amount assessed, and the amount realized from such assessment and from premium receipts, $3,748.95; for the year 1889, to cover disputed losses in litigation at the time of the cancellation, and to cover deficiency in collection of assessments for 1889, $5,730.63. His assessment amounted to $15.82. Upon his refusal to pay, this action was commenced, and, judgment being rendered against him, he appealed to this Court.

The plaintiff company is a mutual fire insurance company, organized under the statutes of this State (How. Stat. chap. 132). Section 4251 provides that the charter (*i. e.,* the articles of association) " may prescribe the liabilities of the members to be assessed towards defraying the losses and expenses of the company, and the mode and manner of collecting such assessments." By the terms of plaintiff's charter, " any member may withdraw at any time by surrendering his policy, and paying to the secretary his proportion of all assessments to which this company is liable at the time of his withdrawal."

This defendant returned his policy November 16, 1889, asking to withdraw. His assessments were paid. He subsequently paid the assessment made to cover the losses which had occurred in 1889, before November 16. By the terms of the contract, defendant had the right to terminate his membership "by surrendering his policy, and paying to the secretary his proportion of all assessments to which the company was liable at the time of his withdrawal." At the time of his surrender he had paid all assessments that had been made against him, but the assessment for losses and expenses for the year 1889 had not been made. The company was liable to assessment for these items, and, for aught that appears, such assessment might have been made at any time. It cannot be that defendant's liability for his proportion of the 11 months' losses could be avoided by a surrender of his policy, or its reception by the secretary. Yet such would be the effect of holding that a withdrawal could be effected upon a surrender of the policy, and payment of the assessments previously made. Defendant himself did not take that view, and promptly paid his proportion of 1889 losses to the date of his withdrawal, as we think he was legally bound to do.

If right in this, we are unable to see why he was not equally bound to pay his proportion of losses incurred in previous years, but not previously assessed, if there were any such, for which the company was liable to assessment at the time of his withdrawal. We are unable to say that there were any such included in the deficiency for the year 1887, as it does not appear that this deficiency was not the result of a failure to collect.

The deficiency for 1889 arose from three items:

1. The Van Alstine loss, in process of litigation at the time of the surrender, but subsequently compromised.

2. The Towle loss, in litigation, and which went to judgment against the company after the surrender.

3. A failure to collect the assessment made in January, 1890.

The identical language used in this charter was used in the charter of the Union Mutual Fire Insurance Company, which came before this Court in the case of *Union Mut. Fire Ins. Co. v. Spaulding*, 61 Mich. 80. In construing it the Court held that the defendant was relieved from liability upon payment of existing losses (*i. e.*, obligations); and it was held in that case that "losses that arose subsequently from failures to collect, or from any other cause, were not existing losses." The principle deducible is that a member cannot, by a surrender, escape liability for such obligations as might lawfully be made the subject of assessment at the time of his surrender. We think we can see how any other rule would be oppressive upon other members, and might subject the more careless or ignorant members to loss, through the withdrawal of the shrewder ones, who, by a show of litigation, might postpone assessments. The Van Alstine and Towle losses being assessable, at the option of the officers, at the time of the surrender, defendant was liable to assessment for them when the assessment was made, under the principle above mentioned.

This view does not, in our opinion, conflict with the case of *Tolford v. Church*, 66 Mich. 440, where the trial court expressly found, as a matter of fact, that the defendant had paid more than his proportionate share of the liabilities of the company at the time of the surrender of his policy for cancellation, although a deficiency arose later through failure to collect.

The case of *Hyde v. Lynde*, 4 N. Y. 387, seems to have been based upon a statute giving to the officers a discretion in the cancellation of policies, and the amount to be

paid by the policy-holder to be released.    The decision was not unanimous.

As it appears that the judgment includes items upon which the defendant was not subject to assessment, it must be reversed, and a new trial ordered.

The other Justices concurred.