THE IONIA, EATON & BARRY FARMERS' MUTUAL FIRE INSURANCE COMPANY AND J. WARREN PEAKE, SECRETARY, v. FRANK D. M. DAVIS, CIRCUIT JUDGE OF IONIA COUNTY.

[See 96 Mich. 558; 97 Id. 522.]

*Injunction—Mandamus—Mutual fire insurance companies—Assessments.*

1. *Mandamus* will lie to review the action of a circuit judge in granting a preliminary injunction, and in refusing to dissolve the same, where the return shows the question in dispute to be one of law, merely.[1]

2. A member of a mutual fire insurance company obligates himself to pay a proportionate share of the losses and expenses for the period during which he is insured; and, if such liability has not been covered by assessment, it continues, although he may have meanwhile ceased to be a member.

[1] For cases involving the question of the dissolution of injunctions by *mandamus*, see:

1. *People v. Circuit Judge*, 31 Mich. 456, holding that the appointment *ex parte* of a receiver to manage the business of a corporation, and the granting of an injunction in like manner on an interlocutory *ex parte* application, whereby the control of the business is taken from the directors, are absolutely void, as beyond the power of the court, and are such an abuse as may be required to be corrected by *mandamus*.

2. *Railroad Co. v. Circuit Judge*, 44 Mich. 479, holding that *mandamus* will lie to dissolve a preliminary injunction restraining a railroad company from running over so much of its road as was built by the complainants under a contract with a tram railway company, to whose assets the defendant has succeeded by purchase, except on condition of carrying logs and lumber for complainants on the terms agreed upon in said contract.

3. *Van Norman v. Circuit Judge*, 45 Mich. 204, holding that an attachment cannot be levied on corporate stock previously assigned by the defendant to his wife, and standing in her name and as her property on the stock book; and, as a bill will not lie to protect the lien of such an attachment by enjoining the payment of dividends to the holder, such an injunction, if granted, can be vacated by *mandamus*.

4. *Maclean v. Circuit Judge*, 52 Mich. 257, holding that *mandamus* will lie to dissolve an injunction restraining proceedings upon a judgment rendered by another court of competent juris-

3. Interest on obligations which it is the duty of the company to pay, and money spent in an attempt to avoid such payment, cannot be charged to subsequent policy-holders, who have no interest in, or liability upon, such obligations.

4. A void assessment is no impediment to a new assessment, in making which the officers of the company may reassess the amount paid upon the void assessment upon the payors, and credit on such assessments such amounts.

5. As a new assessment for a deficiency arising from a failure to collect a former assessment cannot be made upon members whose policies had been canceled previous to the first assessment, it is proper to include a liberal sum for contingencies, and this is usually within the discretion of the directors of the company.

*Mandamus.*    Argued May 1, 1894.    Granted June 2, 1894.

Relators applied for *mandamus* to compel respondent to dissolve an injunction.   The facts are stated in the opinion.

*George E. & M. A. Nichols,* for relators.

*Vernon H. Smith,* for respondent.

diction and co-ordinate authority, issued in a suit instituted for the purpose of canceling the judgment.

5. *Iron Works v. Circuit Judge*, 59 Mich. 272, where *mandamus* was granted to dissolve an injunction issued from the Wayne circuit court, restraining the relator from trying an attachment suit pending in the superior court of Detroit in favor of one of relator's creditors, and commenced prior to relator's assignment of its property for the benefit of creditors.

6. *Railroad Co. v. Circuit Judge*, 61 Mich. 33, where relator applied for *mandamus* to dissolve an injunction, allowed without notice, on a bill filed by another railroad company to prevent the relator from interfering with the intended execution of a crossing under relator's track, which the bill averred had been secured by condemnation proceedings, and which would involve an interference with the running of relator's cars during the construction of a bridge (which injunction was subsequently held illegal in *Railway Co. v. Railroad Co.*, 61 Mich. 9). And it was held that the only end to be reached by the action sought was to remove obstructions to allowing relator to use active measures, outside of legal proceedings, to prevent the further use and occupancy of the disputed territory; and that, so long as the law is open, the Court is not called upon to use its extraordinary powers with a view of assisting private redress of supposed wrongs.

7. *Scott v. Circuit Judge*, 62 Mich. 532, where a married man made an assignment for the benefit of creditors, and a bill was

HOOKER, J. The Ionia, Eaton & Barry Company, above named, is a mutual fire insurance company, organized and doing business under the laws of this State. In the year 1889 it had losses and expenses, and an assessment was made for the purpose of providing a fund with which to discharge its liabilities. Relators allege that this assessment was insufficient to cover all of said liabilities existing for that year, and that a large indebtedness existed that they did not attempt to assess. The amount of the indebtedness unprovided for consisted of—

1. Undisputed losses and expenses in excess of the assessment.

2. Two losses, unadjusted, which were subsequently litigated, known as the "Van Alstine and Towle Losses."

3. Costs and expenses of such litigation.

4. Interest upon the amounts mentioned.

An assessment was made to raise a fund to pay this indebtedness, and upwards of $5,000 was paid upon it. Such assessment being declared void, no further effort was made to collect it, but the money collected had been used

---

filed by certain creditors against the assignor and his wife and the receiver, appointed on the failure of the assignee to qualify, to subject to the assignment two United States registered bonds issued to the wife, and an injunction was granted restraining the transfer of the bonds. On the petition of the receiver, who had been substituted as complainant in the injunction suit, charging that the assignor and his wife had disposed of the bonds in violation of the injunction, an order was made requiring them to show cause why they should not be punished for contempt for such violation. A general answer was put in, denying the violation of the injunction, and, without taking any further proofs, the assignor and his wife were found guilty of contempt, and ordered to pay into the court a certain sum of money, or give bonds to produce it, or stand committed indefinitely. And it was held that there is nothing in the statute justifying the order; that, apart from the difficulty of requiring a third party to pay her own money into court before a final adjudication on the merits, the statute does not permit such a vague sentence of imprisonment; that the whole proceeding was beyond jurisdiction; and a writ of *mandamus* was issued to vacate the order.

8. *Mills v. Circuit Judge,* 77 Mich. 210, where relator applied for *mandamus* to vacate an injunction restraining him from interfering with or obstructing the erection of poles and wires, and the construction, completion, application, and use of the system of electric motive power, described in the bill upon which the injunc-

in payment of the obligations of the company. Thereupon a new assessment was ordered for an amount sufficient to cover the sums mentioned, and 30 per cent. additional, to cover expenses of collection, and shrinkage.

One William D. Place, who from January, 1884, until the date of filing his bill,[1] was a member of, and insured in, said company, filed a bill of complaint, stating the facts hereinbefore outlined, and praying an injunction restraining the levy of such assessment, which he asserted would be a cloud upon his title. The bill alleges the following grounds for the claim that such assessment should not be made, viz.:

*First.* The Towle and Van Alstine losses did not become a liability during the year 1889, inasmuch as they were not adjusted, but were subsequently litigated, and were therefore not chargeable upon policy-holders for that year.

*Second.* The costs and expenses incident to that litigation were not chargeable to policy-holders of that year, as they were incurred later.

---

tion issued, for the operation of a street railway in front of lands held by him as administrator, and the application was denied, the Court holding that the only effect of granting the writ would be to set aside an injunction which, whether right or wrong, had spent its principal force; that the mischief had been so far done that it would be more satisfactory to have the contest before the Court on the entire merits, on an appeal after hearing, so that affirmative relief might be granted the defendant if entitled to it, and a complete disposition made of the whole matter.

9. *City of Detroit v. Circuit Judge,* 79 Mich. 384, where *mandamus* was granted to dissolve an injunction restraining relator from making a contract for city lighting under an accepted bid of an electric light company, the Court holding that the lettings of bidding were not absolutely void and illegal, and that the injunction was an invasion of the discretionary power vested in the city in managing its own affairs, and was beyond the power of the circuit court.

10. *Plank-Road Co. v. Circuit Judge,* 98 Mich. 141, holding that, where an injunction had been issued restraining the laying of a street-railway track along the line of relator's gravel road-bed, an order modifying the injunction, so as to admit of the construction of the track along the side of the highway occupied by said road-bed, but not upon the gravel portion, would not be vacated by *mandamus,* and the original order reinstated, it being within the power of the respondent to determine judicially whether the injunction ought to be granted.

11. See, also, *Buettner v. Circuit Judge, ante,* 179.

[1] The bill was filed April 20, 1894.

100 MICH.—39.

*Third.* The amount voluntarily paid upon the void assessment of 1892 could not be lawfully assessed to reimburse those who had paid it, who were to be credited such amounts upon the new assessment.

*Fourth.* There was no authority to assess 30 per cent. for contingencies.

An injunction *pendente lite* was issued, a motion to dissolve which was denied, whereupon this proceeding was instituted to compel such dissolution.

Ordinarily, this Court does not review the action of the circuit judge in injunction cases.    Where, however, as in this case, the return shows the question in dispute to be one of law, merely, it will consider the case.    The points raised by the bill are those which will be discussed.

Questions arising over matters involved in this case were considered in the case of *Ionia, etc., Ins. Co. v. Otto,* 96 Mich. 558; and it was there held, in substance, that, where an assessment was made to cover certain losses and expenses, subsequent assessments, made necessary by a failure to collect, could not be levied upon those whose policies had been canceled previous to the former assessment.    But it was plainly intimated in that case that a member could not avoid his liability upon accrued losses and expenses by cancellation and payment of assessments theretofore made.    He who insures obligates himself to pay a proportionate share of the losses and expenses for the period during which he is insured; and, as said in the Otto case, if the liability has not been covered by assessment, it continues, though he may have meanwhile ceased to be a policy-holder.    Much can be said against the doctrine that such member should not be liable for deficiencies arising from failure to collect assessments, but we think that question settled by authorities cited in the Otto case.    We consider it clear, however, that until the assessment has been once made the liability continues.

The Otto case, page 561, expressly states that the Towle and Van Alstine losses were existing liabilities at the time of their occurrence. We think it cannot be said that the managers of a company of this kind can relieve present policy-holders, and burden future ones, by delay in adjusting, or by litigating, losses. These losses were a part of the legitimate cost of insurance for that year, whenever and however adjusted. The subject was again alluded to, and the validity of these claims recognized, on motion for rehearing of the Otto case. 97 Mich. 525.

In the case of *Union Mut. Fire Ins. Co. v. Spaulding,* 61 Mich. 80, cited by counsel, the assured had surrendered his policy, and paid an assessment *which not only covered all existing losses,* but also a large sum for contingencies.

The Court said that—

" There can be no doubt, on the findings, that defendant did pay in full all that was his proportion of *any existing losses of the company,* as well as of any assessment levied. Whatever losses subsequently arose from failures to collect, or from any other cause, were not existing losses."

No assessment having been made for these losses, or for the amount of liability for 1889 not covered by the first assessment, the directors might legitimately make an assessment to cover them, with interest and expenses incident thereto, including costs of litigation. It was the duty of the company to pay all of this within 60 days. It chose to do otherwise, and interest, and money spent in trying to avoid the payment of a lawful obligation, can hardly be chargeable to subsequent policy-holders, who have no interest in, or liability upon, such obligations.

The assessment of 1892 was void. Being void, it was no impediment to a new assessment, in making which the officers of the company have reassessed the amounts paid upon those who paid them, and propose to credit on such

assessments such sums. This is equity, and we see no reason for complaint on the part of those who did not pay their void assessments. Certainly, equity has no injunctions for those who seek to escape honest liabilities by imposing undue burdens on others. May, Ins. § 559; *Insurance Co. v. Allen*, 10 Gray, 300; *Nelson v. Milford*, 7 Pick. 18.

The assessment of a sum for contingencies is not uncommon; and where, as under our decisions, a new assessment for a deficiency arising from a failure to collect cannot be made, it is proper to include a liberal sum. It is usually within the discretion of the directors. *Insurance Co. v. Babbitt*, 7 Allen, 235; May, Ins. § 559; *Bangs v. Gray*, 12 N. Y. 477. Thirty-three and one-third per cent. was held reasonable in *Re People's Mut. E. F. Ins. Co.*, 9 Allen, 319. In view of the probabilities of litigation, we are of the opinion that 30 per cent. was not unreasonable. See *Wardle v. Townsend*, 75 Mich. 385.

There is another reason why we think that the circuit judge should have dissolved the injunction. The complainant's bill shows that he has been a member of said company from 1884 until he filed the bill, and therefore liable for his proportion of all these liabilities. We fail to discover any reason why he should complain of an assessment to pay debts which the company is legally bound to pay.

Writ granted.

The other Justices concurred.