## PEAKE *v.* YULE

123   675
f123   684
f123   687
123   675
s82NW 514

1. MUTUAL INSURANCE — CANCELLATION OF POLICY — MEMBER'S LIABILITY.

 A member of a mutual fire-insurance company is liable, on surrender of his policy, for his proportionate share of all losses and expenses sustained by the company while the policy was in force, including a deficiency which has arisen through failure to collect from irresponsible members their share of an assessment theretofore made to meet such expenses and losses.

2. SAME—SUBSEQUENT ASSESSMENTS.

 Where an assessment made against one who has previously surrendered his policy is insufficient to cover his proportion of the liabilities of the company existing at the date of such surrender, a second assessment, made for that purpose by a receiver, may properly include a proportionate share of a deficiency arising through failure of irresponsible members to pay like assessments for such liabilities, made subsequent to the cancellation of the policy.

3. SAME—EFFECT OF RECEIPT IN FULL.

 The liability of a member of a mutual fire-insurance company upon an assessment duly levied is not affected by the fact that, on paying a former assessment for the same purpose, he was given a receipt purporting to be "in full of all demands."

Error to Ionia; Davis, J. Submitted April 6, 1900. Decided April 24, 1900.

*Assumpsit* by J. Warren Peake, receiver of the Ionia, Eaton & Barry Farmers' Mutual Fire-Insurance Company, against E. N. Yule, to recover an assessment on a policy. From a judgment for plaintiff, defendant brings error. Affirmed.

*Clement Smith*, for appellant.

*George E. Nichols*, for appellee.

LONG, J. This action was commenced February 25, 1898, to recover an assessment made by plaintiff as re-

ceiver of the Ionia, Eaton & Barry Farmers' Mutual Fire
Insurance Company.    The bill of particulars is as follows:

"To amount due on assessment on policy No. 5,065
for all losses and expenses of the company sus-
tained between the 1st day of January, 1890, and
June 16, 1892 _____ $41 99

"Contra.

"By cash paid on assessment of 1891 _____ $11 40
"By cash paid on assessment of 1892 _____   9 50
"By cash paid on assessment of 1893 _____   3 80
    "Total, together with interest thereon since
    date of payment respectively _____  35 77

    "Leaving balance due of _____  $6 22
"Together with interest thereon since November 1, 1897, at
6 per cent."

Defendant pleaded the general issue, and gave notice
that he would show on the trial that he had not been a
member of the company since June 16, 1892, and could
not legally be sued; that he had not been indebted to the
company since the cancellation of his policy; and that on
November 5, 1894, he paid the plaintiff, who was secre-
tary of said company, $7.60, in full settlement of all
demands, and received a receipt which so stated.

The cause was tried before the court without a jury,
and findings of fact and law were filed.    The court found,
among other matters, as follows:

"*Fourth.* That said receiver made a careful examina-
tion of the books of said company, and ascertained that
said company duly paid and liquidated all of its losses and
expenses from the time of its organization up to the 1st
day of January, 1890, from moneys arising from assess-
ments ordered and levied by the board of directors of said
company.

"*Fifth.* That the losses for the year 1890 were $8,556.95,
and the expenses for that year $2,134.90; and for the year
1891 the losses amounted to the sum of $4,651.32, and the
expenses to the sum of $2,286.89; for the year 1892, losses,
$1,865.47, and expenses, $2,577.17; for the year 1893,
losses, $2,549.92, and expenses, $2,113.51; for the year
1894, losses, $2,785.26, and expenses, $2,667.08; for the

year 1895, losses, $3,194.29, and expenses, $2,013.39; and for the year 1896, up to and including the 1st day of May, 1897, the losses were $2,194.47, and the expenses $1,936.71. That there was received from assessments during the year 1891 the sum of $9,832.25, from the assessment of 1892 the sum of $7,056.40, from the assessment of 1893 the sum of $3,389.65, from the assessment of 1894 the sum of $3,439.37, from the assessment of 1895 the sum of $2,826.87, and from the assessment of 1896 the sum of $3,067.56; which said sums have been applied in payment of money borrowed for the purpose of liquidating said losses and expenses at the time the same became due, or thereabouts, so far as the same was sufficient so to do.

"*Sixth.* That the defendant was insured in said company for the sum of $3,800.

"*Seventh.* That the assessment of 30 cents on each $100 for losses and expenses for the year 1890 was made in January, 1891, and defendant paid his assessment.

"*Eighth.* That an assessment of 25 cents on each $100 for losses and expenses for the year 1891 was made in January, 1892, and defendant paid his assessment.

"*Ninth.* That defendant's policy was canceled on June 16, 1892, at the office of the company at Ionia, Michigan, at which time he paid to the secretary of said company as follows: Assessment of 1892, $9.50.

"*Tenth.* That defendant has not been a member of said company since his cancellation, and was not a member at the time the receiver was appointed, nor at the time this suit was commenced. That an assessment of 20 cents on each $100 for losses and expenses for the year 1892 was made in January, 1893. Defendant was assessed 10 cents on each $100 insured as the amount of his liability to the date of cancellation, which he paid.

"*Eleventh.* That defendant was not assessed for losses and expenses for the years 1893, 1894, and 1895, although assessments were made upon members of said company for these years.

"*Twelfth.* That July 31, 1894, defendant was assessed for deficiency in assessment of 1890 and for the Van Alstine and Towle losses, which occurred in 1889, and which had been in litigation. This assessment, all told, was $13.30, and he was given credit for $5.70 paid on deficiency of 1890 at the time of the cancellation of his policy, June 16, 1892, leaving a balance of $7.60, which he paid to Mr. Peake, secretary of said company, at his office

in the city of Ionia, on the 5th day of November, 1894, and took therefor a receipt reading as follows:

" '$7.60.                                    Nov. 5, 1894.

" 'Received of E. N. Yule for assessment payable in August, 1894, for unassessed losses and expenses in 1890, the Van Alstine and Towle losses, expenses, and interest, etc., by the Ionia, Eaton & Barry Farmers' Mutual Fire Insurance Company, seven and 60-100 dollars, in full of all demands.

" 'No. 5,065.                           J. WARREN PEAKE, Sec.'

"*Thirteenth.* That the losses and expenses from the 1st day of January, 1896, to the 1st day of May, 1897, have never been assessed or levied against the membership of said company; and that the same amount to the sum of $4,700, or thereabouts; and that the balance due and owing by said company, arising from insufficient assessments in previous years, and failures to collect from irresponsible members, or parties who have refused and neglected to pay the amount so assessed against them, left a total indebtedness, at the date of the assessment of said receiver, of about $11,680.09.

"*Fourteenth.* That on the 21st day of June, 1897, an order was made in said matter, based upon the petition of the receiver, setting forth the facts and circumstances, wherein and whereby the receiver was ordered and directed to levy an assessment, to be known as 'Receiver's Assessment Number One,' which said assessment should fix the liability of each person or member insured in said company for the losses, expenses, and interest thereon during the period that said person or member was a member of said company, and deducting from the amount of such liability all such sums as such person or member may have before that time paid upon any former assessments, or otherwise, in liquidation of such liability or indebtedness of such company, together with the interest thereon from the date of such payment until the 1st day of October, 1897, thus showing the amount due October, 1897, from each member or person insured in said company, according to the amount insured, and upon exactly, or as near as may be, an equitable and *pro rata* basis; and that, in pursuance of said order, said receiver proceeded to and did levy his assessment in accordance therewith.

"*Fifteenth.* That in pursuance of said order the said receiver ascertained that the defendant was indebted to

him, as such receiver, in the sum of $6.22 for losses and
expenses which occurred while he was a member of said
company, on account of the policy hereinbefore mentioned;
and that, after making said assessment, the receiver gave
the notice as required by section 17, Act No. 82, Laws
1873, by publishing in the Hastings Herald, the Ionia
Express, and the Charlotte Leader, weekly newspapers
printed, respectively, in Barry, Ionia, and Eaton counties,
once in each week for three successive weeks, a general
notice, wherein was stated the aggregate amount assessed
in said company.

"*Sixteenth.* That the entire assessment from January
1, 1890, to June 16, 1892, the date of the cancellation of
defendant's policy, was insufficient to cover the losses and
expenses by $899.90, and the defendant's *pro rata* share,
under his policy, during the period, for actual liability for
nonassessment, is $2.02; that the failures to collect exist-
ing at the date of the cancellation of defendant's policy,
added to the actual failures to assess, created a deficiency
of $2,699.90; that the defendant's liability, both from fail-
ure to collect and for nonassessment, prior to his cancella-
tion, amounts to $6.06, and the amount of liability exist-
ing for failure to collect since the cancellation of his policy
is 16 cents.

"I therefore find, under the foregoing facts, that the
defendant is liable to the plaintiff, as a matter of law, in
the sum of $6.44 for damages, with costs to be taxed, and
that a judgment be so entered."

Judgment was entered for this amount, together with
the costs, amounting to $47.34. Exceptions were taken
to these findings, and to the refusal of the court to find as
requested by defendant. The defendant asked the court
to find as stated in his sixth, seventh, ninth, and twelfth
requests, as follows:

"*Sixth.* The assessment of 30 cents on each $100 for
losses and expenses for the year 1890 was made in Jan-
uary, 1891, and defendant paid his assessment, the same
being his proportionate share, based upon the amount of
his insurance, for the losses and expenses for the year
1890.

"*Seventh.* Said assessment made in 1891 was sufficient,
if paid by the then members and policy holders, to pay all
losses and expenses for the year 1890."

"*Ninth*. Said assessment so made in 1892 [see eighth finding, *supra*] was sufficient, if paid by the then members and policy holders, to pay all losses and expenses for the year 1891."

"*Twelfth*. This assessment of 20 cents on each $100 insured [see tenth finding, *supra*], if paid by the then members and policy holders, was sufficient to pay all losses and expenses for the year 1892, and the assessment of 10 cents made upon the policy of defendant was sufficient to pay his share of the losses and expenses of said company from the 1st day of January, 1892, to the 16th day of June, 1892, the date of his cancellation."

It is contended by counsel for defendant that the statute under which the receiver gets his authority provides for his collecting the assessments from members; and that defendant, not being a member of the company at the time the assessment was made or at the time suit was commenced, could not be made liable in this action. Counsel cites *Tolford* v. *Church*, 66 Mich. 441 (33 N. W. 913). Counsel is in error in supposing that, because defendant's policy had been canceled before this suit was commenced, he could not be proceeded against for the claim here sued upon. It was expressly held in *Ionia, etc., Ins. Co.* v. *Otto*, 96 Mich. 561 (56 N. W. 88), that a member could not, by a surrender, escape liability for such obligations as might lawfully be made the subject of assessment at the time of the surrender. It was also said in that case that this principle did not conflict with *Tolford* v. *Church, supra*, " where the trial court expressly found, as a matter of fact, that the defendant had paid more than his proportionate share of the liabilities of the company at the time of the surrender of his policy for cancellation, although a deficiency arose later through failure to collect." The *Otto Case* is referred to in *Ionia, etc., Ins. Co.* v. *Ionia Circuit Judge*, 100 Mich. 610 (59 N. W. 250, 32 L. R. A. 485). It was there said :

" Questions arising over matters involved in this case were considered in the case of *Ionia, etc., Ins. Co.* v. *Otto*, 96 Mich. 558 (56 N. W. 88), and it was there held, in substance, that, where an assessment was made to cover

certain losses and expenses, subsequent assessments, made necessary by a failure to collect, could not be levied upon those whose policies had been canceled previous to the former assessment. But it was plainly intimated in that case that a member could not avoid his liability upon accrued losses and expenses by cancellation and payment of assessments theretofore made. He who insures obligates himself to pay a proportionate share of the losses and expenses for the period during which he is insured; and, as said in the *Otto Case*, if the liability has not been covered by assessment, it continues, though he may have meanwhile ceased to be a policy holder. Much can be said against the doctrine that such member should not be liable for deficiencies arising from failure to collect assessments, but we think that question settled by authorities cited in the *Otto Case*. We consider it clear, however, that, until the assessment has been once made, the liability continues. The *Otto Case* expressly states that the Towle and Van Alstine losses were existing liabilities at the time of their occurrence. We think it cannot be said that the managers of a company of this kind can relieve present policy holders and burden future ones by delay in adjusting or by litigating losses. These losses were a part of the legitimate cost of insurance for that year, whenever and however adjusted. The subject was again alluded to, and the validity of these claims recognized, on motion for rehearing of the *Otto Case*, 97 Mich. 522 (56 N. W. 755)."

It is also contended by counsel that the defendant had a receipt in full, and that, in the absence of mistake, or fraud, or duress, or undue influence, it is conclusive; that there was a disagreement between defendant and Mr. Peake at that time, and Mr. Peake gave the defendant to understand that, if this claim was paid, no other claim would be made against him; and that with this understanding the defendant paid the amount demanded. As we understand the record, there is no question but that, at the time the defendant made the settlement with Mr. Peake, it was understood that the amount paid would settle the claims against the defendant in full. This was on November 5, 1894, the amount paid being $7.60, and the receipt specifying that it was "for assessment payable in August, 1894, for unassessed losses and expenses in 1890,

the Van Alstine and Towle losses, expenses, and interest, etc.," and that it was given "in full of all demands." The court below found, however, that there were certain losses "arising from insufficient assessments in previous years, and failures to collect from irresponsible members, or parties who have refused and neglected to pay the amount so assessed against them;" that on the 21st day of June, 1897, an order was made in said matter, based upon the petition of the receiver, setting forth the facts and circumstances, wherein and whereby the receiver was ordered and directed to make an assessment, to be known as "Receiver's Assessment Number One;" that this assessment was to fix the liability of each member of the company during the time such person was a member, after deducting all sums theretofore paid. Upon this computation the court found the amount due from the defendant was $6.44. It was said in *Ionia, etc., Ins. Co.* v. *Otto,* 96 Mich. 561 (56 N. W. 88), that:

> "The principle deducible is that a member cannot, by surrender, escape liability for such obligations as might lawfully be made the subject of assessment at the time of his surrender. We think we can see how any other rule would be oppressive upon other members, and might subject the more careless or ignorant members to loss through the withdrawal of the shrewder ones, who, by a show of litigation, might postpone assessments."

It was found by the court that, as to the defendant here, he was liable for nonassessments $2.02. It was also found by the court that there was a failure to collect assessments made prior to defendant's withdrawal; that this amount, added to the amount arising from failure to assess, made a total of $6.06. In *Wardle* v. *Townsend,* 75 Mich. 385 (42 N. W. 950, 4 L. R. A. 511), some language was used which at first might seem to imply that no future assessment could be made after one assessment had been made. That, we think, was not intended. That question was not involved in that case, but Mr. Justice Champlin was arguing the necessity for the receiver

to make a somewhat liberal allowance for which assessment should be made, so that no future one would be necessary to meet the amount required if certain of the members failed to pay. In the present case the defendant did not pay all the existing liabilities at the time his policy was canceled. There was $2.02 which had not been assessed against him, and there was also a liability of $4.04 on failures to collect on assessments for losses which occurred before the date of cancellation.

We think defendant must be held liable for the 16 cents which the court charged against him, which arose from failure to collect from irresponsible members after the date of the cancellation of his policy. The underlying principle of all insurance is complete indemnity for all losses insured against. The receiver attempts to pay all such losses in full, and, in order to do so, must collect from responsible members an amount sufficient to meet such demands. There can be no difference between an assessment laid by the receiver and one made by the company itself. Section 17 of the act under which the company was organized provides that the receiver—

" Shall at once proceed to assess upon all of the members and persons insured in such company such sums of money as will in the aggregate be sufficient to pay all the losses and liabilities of said company, together with the services and expenses of such receiver." Section 17, Act No. 82, Laws 1873 (2 Comp. Laws 1897, § 7282).

In *Russell* v. *Berry*, 51 Mich. 290 (16 N. W. 652), the court, in speaking of this section, said:

" It declares that the receiver shall at once proceed to assess upon all the members and persons insured in such company * * *, and power is given to enforce collection by action in the circuit court, and also to reassess as often as necessary. No reference is made to undertakings, nor to the state of account in regard to prior assessments or former payments. No exception is made nor qualification expressed, nor is any discretion given. The terms are imperative. The law is now dealing with the company when it has become insolvent and is being wound up in chancery."

We think the court below was not in error in his findings or in the judgment entered. Judgment must be affirmed.

The other Justices concurred.