SEAMANS vs. THE MILLERS' MUTUAL INSURANCE COMPANY OF WISCONSIN (BUELL, Receiver, Respondent: KENDALL and others, Appellants).

*May 22 — June 20, 1895.*

*Mutual insurance companies: Assessments: Release of member from liability: Withdrawal: Annulment of policy: Measure of liability: What assessment may include: Receivers.*

1. The directors of a millers' mutual insurance company, organized under secs. 1941a–1941g, S. & B. Ann. Stats., who had decided to wind up its affairs, could not release a policy holder from liability for further assessments upon the surrender of his policy and the payment by him of an assessment insufficient to meet the expenses of the company and the losses which had then been sustained.
2. The surrender of the policy and payment of such insufficient assessment by the policy holder, and the return to him of his deposit note, with the understanding that he should not be called upon for any further assessment, did not constitute a withdrawal by him from the company under sec. 1941f, nor an annulment of his policy.
3. The amount of their deposit notes being, under the by-laws of the company and by the terms of the notes themselves, the measure of the liability of policy holders, those who had paid such notes in full were properly not included in an assessment.
4. An assessment made by the receiver of an insolvent mutual insurance company may include a reasonable amount for the expenses of the receivership, and also an allowance for shrinkage and uncollectible assessments.
5. The right of a receiver to make an assessment cannot be questioned on an appeal from orders directing him to make and collect it but not from the order appointing him.

APPEAL from orders of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This is an appeal by a policy holder in the Millers' Mutual Insurance Company of Wisconsin from three orders made by the superior court of Milwaukee county. The Millers' Mutual Insurance Company was organized in 1882 under the provisions of ch. 255, Laws of 1878, which chapter is embodied in secs. 1941*a*–1941*g*, S. & B. Ann. Stats. It continued its business until July, 1892. On the 30th day of January, 1891, the appellants, *J. O. Kendall & Co.*, insured three mills at Hartford, by a policy issued by said company, for the sum of $5,000, for the term of five years. On the issuance of the policy the appellants paid a cash premium of $43.75, and gave a premium or deposit note by which they promised to pay to the company $437.50, by instalments, at such times as the directors might order and assess for the losses and expenses of said company pursuant to its charter and by-laws, which provided that in no event should there be any liability beyond the face amount of the note.

The articles of incorporation of the company provided that all persons insured should give their obligations binding themselves, their heirs and assigns, to pay their *pro rata* to the company of all the necessary expenses and losses by fire which might be sustained by any member thereof during the time for which their respective policies were written. Article 8 of the by-laws of the company also provided that policy holders should give their obligations to pay their *pro rata* of the losses and expenses of the company, as provided in the articles of incorporation, and should also pay a cash premium equal in amount to ten per cent. of said obligation, which cash premium should constitute a reserve fund, and should also pay semi-annual premiums, not exceeding for any six months ten per cent. of the deposit note, during the continuance of the said policy in force. Article 9 of said by-laws further provided for an assessment against the de-

posit notes on the first day of each month to meet the losses and expenses of the previous month, provided, however, that no assessment should exceed in the aggregate the amount unpaid on any note.

The appellants paid their cash premiums on the receipt of the policy, and also paid their semi-annual premiums due July 1, 1891, and January 1, 1892, and they also received a notice from the company, July 1, 1892, that another semi-annual premium would be due July 10, 1892. At a meeting of the directors of the company held July 7, 1892, before the appellants had paid the last-named semi-annual premium, it was decided to wind up the affairs of the company, cancel all its policies, and go out of business, and to levy an assessment upon all the premium notes to pay up losses and expenses. Notice of this action was sent by the secretary of the company to all policy holders, including the appellants, which notice stated the amount of the assessment against each policy holder, and requested an immediate payment thereof. This notice also contained a statement of the liabilities and assets of the company, from which it appeared that their liabilities, including contested claims, amounted to $25,204.74; that they held premium notes, subject to assessment, of the face value of $138,972.38; and their assets (including about $2,700 cash) were estimated to amount, in all, to $4,260.09. The notices further stated that, on receipt of the appellants' policy and a draft for the assessment, the company would return the appellants' deposit note, and that the possibility of further assessment would thereby be removed. This assessment was levied against all policy holders who held policies July 7, 1892, being 299 in number. Of these, 243 paid the assessment, which amounted to $18,947.18, and fifty-six did not pay the assessment, which amounted to $5,213.08. The whole assessment amounted to $24,160.26. The appellants paid their assessment, which amounted to $118.91, and their deposit note was returned to them.

Afterwards, in March, 1893, the plaintiff, Seamans, a creditor of the company, brought an action in the superior court, as aforesaid, against the company, to wind up its affairs and for the appointment of a receiver on the ground, among others, that the company was insolvent. In this action the company made answer, and upon due proceedings the respondent, *Buell*, was appointed and qualified as receiver, and proceeded to wind up the business of the company. On the 10th day of May, 1894, the receiver petitioned the court for authority to make an assessment against the policy holders of the company, representing that the unpaid claims which had been allowed amounted to more than $6,000, that the expenses of the receivership would exceed $3,000, and that the assets of the company, apart from the deposit notes, did not exceed $2,700. Upon this petition an order to show cause was granted, and served upon all the policy holders, including the appellants. Upon the hearing of the petition the appellants appeared and objected to any assessment against them, on the ground that they had been released from any further liability by payment of the assessment of July, 1892, and the surrender of the deposit note. The court subsequently made an order directing the receiver to make an equitable and just assessment against all of the policy holders of the company who were such on the 7th day of July, 1892, sufficient to pay the losses and expenses of the receivership. This order was made July 21, 1894, and is the first order appealed from by the appellants.

On the same day the receiver made an assessment against the policy holders, including the appellants, the amount of such assessment being $35. The receiver upon the same day reported said assessment to the court, and produced proof in support of its correctness, and thereupon the court made another order, finding, among other things, that the unpaid claims against the company which had been allowed by the court amounted to the sum of $6,251.37, and that the

costs and expenses of the receivership would exceed the sum of $3,000, and that the assessment made by the receiver was a just and equitable assessment and was thereby confirmed. Said order also directed the receiver to proceed to collect such assessment. This is the second order appealed from.

Thereafter the appellants moved to vacate the last above-mentioned order. Said motion was heard upon affidavits, and denied. This is the third order appealed from.

For the appellants there was a brief by *H. W. Sawyer*, attorney, and *Haring & Frost*, of counsel, and oral argument by *Mr. Sawyer* and *Mr. C. I. Haring*.

*Geo. E. Sutherland*, for the respondent.

WINSLOW, J. The first and most important question on this appeal is as to the effect of the transaction of July, 1892, between the appellants, *Kendall & Co.*, and the officers of the defunct insurance company, by which the appellants' policy was surrendered to the company, their deposit note returned to them, and the assessment of July 7, 1892, paid, upon the assurance that they would not be called upon for any further assessment. It is argued that the effect of this arrangement was to terminate the contract of insurance for all purposes, and to release them from any future assessments. Were the case one where a person had bought his release from the obligations of an ordinary executory contract by a payment of money not then owing, the argument would be strong, but it is not such a case. One who is insured in a mutual insurance company, such as the one in question, occupies the double position of the insurer as well as the insured. He has not only obtained a contract by which the other policy holders are obliged to indemnify him against loss, but he has bound himself to indemnify, up to a certain amount, his fellow insurers against loss occurring during the term of his insurance. This obligation results not only from the terms of his policy and deposit note, but

also from the terms of the organic law under which the company is organized, as well as from the provisions of its charter and by-laws. Sec. 1941c, S. & B. Ann. Stats., under which this company was organized, provides that all persons insured by such company shall give their obligations, binding themselves, their successors, heirs, and legal representatives to pay to such company their *pro rata* " of the *necessary* expenses of such company, and of all losses by fire or lightning which may be sustained by any member thereof, upon property insured, during the time for which their respective policies shall continue in force." The question simply is, whether the officers of the company can release a member from his contract and statutory obligations with other members, upon his payment of an insufficient assessment. If they can, there would seem to be no safety in mutual insurance. If they can release one, they can release all. If, upon payment of an assessment of seventy-five per cent. of the amount of the unpaid losses, they can release their policy holders, they may with equal reason release them upon payment of an assessment of five per cent. The absurdity of such a result is apparent.

The statute (sec. 1941*f*) provides that a member may withdraw from the company by giving notice in writing to the secretary, and paying all dues and his ratable share of all losses up to the date of his withdrawal; and it is argued that the appellants' transaction with the secretary constitutes, in effect, a withdrawal. It is sufficient to say of this that neither requirement of the statute was complied with. No notice of withdrawal was given, and it conclusively appears that the appellants did not pay their share of the losses outstanding at that time. That clause of the section above cited which gives the officers power to annul a policy has no bearing here, because there has been no attempt to annul any policy. The action of the directors of the company, in

substance, was simply a determination to cease business, issue no further policies, make and collect an assessment to pay outstanding claims, and discharge such claims. It seems very clear to us that this action does not constitute an annulment of a policy.

Our conclusion is that the appellants were not released from further necessary assessments for losses occurring during the life of the policy by the arrangement of July, 1892. There are numerous adjudication which sustain this principle. *Comm. v. Mass. Mut. F. Ins. Co.* 112 Mass. 116; *Ionia, E. & B. F. M. F. Ins. Co. v. Otto,* 96 Mich. 558; *Detroit M. M. F. Ins. Co. v. Merrill,* 101 Mich. 393. As stated at the outset, this is the first and most important question in the case, and we think, also, the controlling question.

Other objections were raised and discussed, but we regard none of them as well taken. It seems that by the payment of the assessment made by the company in July, 1892, a considerable number of the policy holders paid their deposit notes in full. Such policy holders were not included in the receiver's assessment. Plainly, this was right. The amount of the note was the measure of the liability. This is the provision of the by-laws of the company, as well as the provision of the deposit notes themselves.

It is said that no assessment could be made for the expenses of the receivership, nor for shrinkage and uncollectible assessments. This question was very recently examined and decided by this court in favor of such right. *Davis v. Shearer, ante,* p. 250. It is true that the assessment in this case makes a very large allowance for shrinkage and uncollectible assessments, but the court below approved the estimate upon testimony given by the receiver's attorney, who has managed the receiver's legal affairs from the beginning and has very complete knowledge of the probabilities of collection, and we cannot say that too great an allowance

Zieman vs. The Kieckhefer Elevator Mfg. Co.

was made. The receiver's right to make an assessment cannot be questioned on this appeal. The order appointing him has not been appealed from. *Davis v. Shearer, supra.*

Our conclusion is that the orders appealed from were rightly made.

*By the Court.*— Orders affirmed.