ANDERSON and another, Respondents, vs. THE CHICAGO TITLE & TRUST COMPANY, Intervener, Appellant.

*November 25 — December 16, 1898.*

*Receivers: Intervention: Judicial sales: Foreign judgments.*

1. After the assets of an insolvent corporation had been placed in the hands of a receiver, a large majority of its creditors agreed to settle their claims at a discount, and by order of the court the receiver sold the assets, and the plaintiffs bought the same, including a certain note, in good faith and for value, and the sale was confirmed by the court, and provision was made for the nonassenting creditors. One of the latter, who had notice of said proceedings but made no objection thereto, afterwards brought a suit against the corporation in its own behalf, and procured the appointment of another receiver, who was directed to take possession of the assets of the insolvent. *Held,* that the latter receiver was not entitled to intervene in an action by the plaintiffs on the note so bought by them against the makers thereof, and in that action contest the plaintiffs' title to such note.

2. The validity of a judicial sale of the assets of an insolvent corporation by the receiver thereof cannot be impeached in a collateral action.

3. Under the provision of sec. 1, art. IV, Const. of U. S., the proceedings of a court of Illinois, having jurisdiction of the parties to and the subject matter of an action, are to have the same credit, validity, and effect in the courts of this state as they would have had in a collateral attack upon the same in Illinois.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

For the appellant there was a brief by *Lewis, Briggs & Dudgeon,* and oral argument by *H. M. Lewis.* To the point that a judgment may be attacked on the ground that it was suffered for the purpose of hindering, delaying, and defrauding creditors, of whom the party making the attack is one, they cited 2 Freeman, Judgments, §§ 335, 336; *Mackie v. Cairns,* 5 Cow. 547; *Robinson v. Davis,* 11 N. J. Eq. 302; *Atkinson v. Allen,* 12 Vt. 619; *Downs v. Fuller,* 2 Met. 135;

*Beeler's Heirs v. Bullitt's Heirs,* 3 A. K. Marsh. 280; *Clark v. Foxcroft,* 6 Me. 296; *Atlas Nat. Bank v. More,* 152 Ill. 528; *Palmer v. Martindell,* 43 N. J. Eq. 90; *Shellcross v. Deats,* 43 N. J. Law, 171; *Freydendall v. Baldwin,* 103 Ill. 325; *Bunn v. Ahl,* 29 Pa. St. 387; *Werner v. Zeirfuss,* 162 id. 360, 367, 368; *Breslauer v. Geilfuss,* 65 Wis. 377.

For the respondents there was a brief by *Jones & Stevens,* and oral argument by *B. W. Jones.*

CASSODAY, C. J.    This is a controversy as to the ownership of a note executed September 9, 1896, by the defendants Johnson, Felland & Hansen, copartners doing business in Madison, to the order of the Wagg-Anderson Woolen Company, a corporation previously organized under the laws of Illinois, and doing a mercantile business at Chicago, for $1,360 and interest, due four months after date, and upon which $300 had been paid before due, and which note was given in consideration of goods purchased by Johnson, Felland & Hansen of the Wagg-Anderson Woolen Company some time prior to January 27, 1896.    This action was commenced February 26, 1897, by the plaintiffs, who were copartners doing business in Chicago, against the makers of the note, and the defendant the *Chicago Title & Trust Company* thereupon intervened, and claimed title to the note, September 18, 1897.    The following facts appear from the record, and are found by the court, in effect:

On January 27, 1896, the Equitable Trust Company of Chicago was duly appointed by the circuit court of Cook county the receiver of all the property of the Wagg-Anderson Woolen Company, and that corporation was duly directed to deliver to such receiver its contracts, notes, and evidences of debts, and the receiver was duly authorized to make use of the name of the corporation for the purpose of recovering any debts belonging to the same.    On January 25, 1896, and two days prior to such receivership, the Wagg-Anderson

Woolen Company was insolvent, and confessed judgments in favor of certain creditors in the circuit court and superior courts of Cook county, and writs of execution were issued thereon, and the sheriff levied upon the property of that company. Some of the judgments so confessed were irregular and for more than the amount due. Many actions were brought against the company, and creditors' bills were filed, in said courts, all of which were consolidated in one petition. On February 17, 1896, the Equitable Trust Company resigned as receiver, and such proceedings were duly had that Frank M. Forrey, of Chicago, was duly appointed and made receiver in its stead. On February 15, 1896, an agreement was entered into between about ninety-six per cent. in amount of claims of the creditors of the Wagg-Anderson Woolen Company whereby it was agreed that they should accept as full payment of their claims sixty-five per cent. according to the terms of certain notes which were then delivered to the creditors, dated February 1, 1896, payable six, nine, and twelve months after date, with interest at six per cent., each to be executed by that company, and to have the indorsement of A. J. Anderson, who was one of the principal stockholders of that company; that the business should be continued by the receiver, who was at liberty to employ the officers of the company, all of whom were to consult with the creditors' committee then appointed. An investigation was had as to the validity of such judgments, and certain of them were vacated, and others were released in part by stipulation, and the true and just amount of such judgments duly ascertained, and the just amounts so ascertained were allowed to stand. On February 26, 1896, Albert J. Anderson purchased all the stock of the other stockholders of that company. In the decree of the circuit court for Cook county entered February 26, 1896, the receiver was directed to have the assistance of the officers of the Wagg-Anderson Woolen Company, and to allow them such latitude as might be required for the

successful prosecution of the business, but to render supervision and control thereof, and with the right to discharge them, subject to the orders of the court; and it was provided that the business might be continued and receiver's certificates issued pursuant to the orders of the court, and that on the payment of all the indebtedness of the consenting creditors, together with all the costs and expenses, the company might resume control of its business pursuant to orders of the court; and the receiver was empowered to appropriate, sixty-five per cent. of the amount of the claims of nonconsenting creditors, upon their consenting to the compromise.

The receiver, Frank M. Forrey, and the committee of creditors, ascertained that A. J. Anderson could not carry out the compromise arrangement, and they thereupon entered into negotiations with the plaintiffs, who were relatives of A. J. Anderson (father and uncle), and persons of sufficient means and good credit, for the purpose of making a sale of the property, with the belief that by so doing the greatest amount could be realized from the property. Upon due application to the circuit court the receiver, Forrey, was ordered to sell to the plaintiffs all the property and assets of the Wagg-Anderson Woolen Company then in his hands, and such sale was duly made December 28, 1896. The plaintiffs at that time bought the property of that company, including the note in question, for a full consideration of $80,000, in good faith, with no fraudulent intent, and without knowledge or notice of any fraud whatever, and on February 15, 1897, and before the commencement of this action, such judicial sale to them was duly confirmed by the circuit court for Cook county, and the plaintiffs have since actually paid a large amount of such indebtedness, and their notes were outstanding for the balance.

On February 23, 1897, Frederick Almy & Co., of New York, who were judgment creditors of the Wagg-Anderson Woolen Company, filed a bill in chancery in the superior

court for Cook county, upon unsatisfied judgments recovered by them, for the purpose of winding up said corporation. The intervening defendant, the *Chicago Title & Trust Company*, March 8, 1897, was duly appointed receiver of said Wagg-Anderson Woolen Company by the superior court of Cook county, and it was thereby directed to take charge of its assets and collect its accounts, and the *Chicago Title & Trust Company* duly qualified as such receiver. F. Almy & Co. had full notice of the pendency of the proceedings in the consolidated actions in the circuit court for Cook county soon after January 25, 1896, and of the appointment of the first two receivers above named, and of the action of the committee of creditors and of the receiver, and of the intention of the receiver to sell the assets under the order of the circuit court December 28, 1896, but they made no objection to such judicial proceeding, and made no appearance in any manner therein.

As conclusions of law, the court found, upon the facts stated, that the plaintiffs became, by reason of such sale, and payment of the purchase money, and the assuming of such liabilities, and the order of the court confirming such sale, the owners of the note described in the complaint; that the order and judgment of the circuit court for Cook county confirming the sale were binding and conclusive, and that the same could not be attacked collaterally by the defendant company; and ordered judgment against the defendant company for costs, and that the action proceed against the other defendants.

From judgment entered thereon accordingly, the defendant company brings this appeal.

The facts found by the trial court appear to be supported by the evidence. It must be conceded that several of the judgments confessed by the Wagg-Anderson Woolen Company January 25, 1896, were grossly in excess of the true amount due to the creditors in whose favor they were, re-

spectively, entered, and some of them seem to have been substantially fictitious. It is said, in extenuation, that the judgments were hastily confessed, to prevent replevin suits and to keep the assets intact, and that, in so far as they were excessive or apparently fictitious, they were intended to secure contingent liabilities. For the purposes of this appeal, however, it is assumed that some of them were so confessed with the intent to secure preferences, and, in so far as others were excessive or fictitious, they were confessed with the intent to defraud other and unfavored creditors. But it appears that, after the first receiver was appointed by the circuit court of Cook county, an investigation was had as to the validity of such judgments, and some were vacated by the courts, and others were released in part by stipulation, and the true and just amounts ascertained, and only such amounts allowed to stand in the consolidated actions. So much of such judgments as was thus allowed to stand would seem to have been purged of all fraud or want of equity.

True, only ninety-six per cent. in amount of claims of all creditors concurred in the agreement and compromise under which the receivership was changed from the Equitable Trust Company of Chicago to Mr. Forrey, and then continued under his supervision, as directed and controlled by the orders of the circuit court, for more than a year before Almy & Co. instituted adverse proceedings in the superior court for Cook county. During all that time Almy & Co. had full notice of the pendency and proceedings of the consolidated actions, and the appointment of the first two receivers and the intention of the receiver Forrey to sell the assets December 28, 1896, under the order of the circuit court; and yet they made no objection, but allowed the sale of such assets to the plaintiffs to take place on the day and year last named, and allowed them, in good faith, and without any fraudulent intent, and without any knowledge or notice of any fraud, to pay for such assets — including the note in

question — $80,000; and that sale and purchase were fully confirmed by the circuit court February 15, 1897.

The question recurs whether the defendant corporation, as such receiver, so appointed March 8, 1897, in the suit of Almy & Co., can have that order of confirmation, and that purchase and sale, and the proceedings and order of the circuit court authorizing · and directing such sale, all set aside by this court in this collateral proceeding. We are all clearly of the opinion that it cannot. It is not the case of conflicting claims between attaching or other lien creditors; nor is it the case of a mere fictitious or fraudulent judgment, never adjudicated in the court in which it is rendered. If Almy & Co. desired to contest the right of Mr. Forrey, as such receiver, to make such sale to the plaintiffs, they had plenty of opportunity to seize such assets before the sale, or intervene in the consolidated actions, and could have done so far more conveniently in Chicago than Wisconsin. There is no pretense that the circuit court of Cook county did not have jurisdiction of the parties to and subject matter of the consolidated actions. The judicial sale of the note in question and the assets to the plaintiffs, by the authority, direction, and sanction of that court, and without notice of any fraud, and for a valuable consideration, is certainly entitled to the respect of this court, and cannot be disregarded or impeached collaterally. *Brande v. Bond,* 63 Wis. 140; *Davis v. Shearer,* 90 Wis. 250; *Seamans v. Millers' Mut. Ins. Co.* 90 Wis. 490; *Christmas v. Russell,* 5 Wall. 290; *Brown v. Frost,* 10 Paige, 243.

Of course, the proceedings in the circuit court for Cook county are to have the same credit, validity, and effect in the courts of this state as they would have had in a collateral attack upon the same in the state of Illinois. Const. of U. S. art. IV, sec. 1; *Mills v. Duryee,* 7 Cranch, 484; *Hampton v. McConnel,* 3 Wheat. 234; *Sanborn v. Perry,* 86 Wis. 366. This court has gone as far, if not farther, than most

courts, in holding that "one circuit court in this state will not restrain the enforcement of a judgment, whether for legal or equitable relief, rendered in another circuit court." *Orient Ins. Co. v. Sloan*, 70 Wis. 611. That ruling has been frequently sanctioned. *Fenske v. Kluender*, 61 Wis. 602; *Coon v. Seymour*, 71 Wis. 340; *Cardinal v. Eau Claire L. Co.* 75 Wis. 404; *First Nat. Bank v. Greenwood*, 79 Wis. 269, 274; *Stein v. Benedict*, 83 Wis. 610.

We cannot disturb the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.