CASE 76.—ACTION BY THE EQUITABLE MUTUAL FIRE IN SURANCE CORPORATION OF NEW YORK'S RE CEIVER, AGAINST LOGAN C. MURRAY ON A CAPI TAL STOCK NOTE TO ENFORCE LIABILITY FOR CALLS MADE.—February 2.

## Equity Mut. Fire Ins. Corp's Receiver v. Murray

Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

MAT O'DOHERTY, Judge.

From the judgment plaintiff appeals, and defendant files cross-appeal.—Reversed on original and affirmed on cross appeal.

1. Limitations of Actions—Action on Capital Stock Note—Liability Arising From Contract.—An action on a capital stock note given to a mutual fire insurance company to secure assessments called, is governed by the 15 and not the 5-year statute of limitations; the maker's liability arising not alone from the call but from the note itself.

2. Insurance—Capital Stock Note—Validity—Conflict of Laws.— A capital stock note, given to a mutual fire insurance company, executed in New York and made payable therein, is a New York contract, and its validity should be determined by the laws of that state.

3. Same—Estoppel to Attack.—A maker of a capital stock note, given to a mutual fire insurance company to secure called assessments, may not, after receiving the benefits of the insurance, resist liability on the note on the ground of fraud or want of consideration; the New York law, by which the note was governed, requiring that, where one of two persons must suffer by the fraud of a third person, the loss should fall on him who first gave the credit.

4. Same — Mutual Companies — Insolvency — Assessing Solvent Members.—The receiver of an insolvent mutual insurance association may assess solvent members thereof to make up for the inability of insolvent members to respond to assessments.

WEHLE & WEHLE for appellant.

### POINTS AND AUTHORITIES.

1. In an action brought in Kentucky upon an obligation arising under the laws of a foreign state the Statute of Limitations of Kentucky must govern the remedy. (Wood on Limitations, sec. 8; Kentucky Digest Limitation of Actions, sec. 1; Bennett v. Devling, 17 B. Mon. 353; Farmers Bank v. Lorell, 8 Ky. Law Rep. 261.)

2. The obligation for the payment of an assessment upon a "capital stock note" in a mutual fire insurance company made in accordance with the mutual insurance laws of New York is an obligation upon which the right of action does not accrue until after the demand or assessment has been made.

Equitable Mut. Fire Ins. Corp.'s Receiver v. Murray.

3. The action brought to recover the amount of assessment or demand is an action, not upon the assessment or demand, but an action upon the note itself, to the extent of the assessment or demand. (Raegener v. Hubbard, 56 N. Y. Supp. 173; Raegener v. Hubbard, 167 N. Y. 301; Raegener v. Medicus, 66 N. Y. Supp. 460; Raegener v. Medicus, 171 N. Y. 699; Raegener v. Warner, 56 N. Y. Supp. 310; Raegener v. Phillips, 56 N. Y. 174; Raegener v. Hubbard, 57 N. Y. Supp. 1018; Raegener v. McDougall, 53 N. Y. Supp. 484; Cyc. Vol. 7, p. 854, note 30; Howland, Receiver of New York Protection Insurance Co. v. Edmonds, 33 Barbour, 433; Hope Mutual Life Insurance Co. v. Weed, 28 Conn. 51.)

4. Such a capital stock note is an "obligation in writing for the payment of money," and any right of action upon it cannot be barred for fifteen years under section 2514 of the Kentucky Statutes. (White's Admr. v. Curd, 86 Ky. 191—1887.)

5. An action upon a capital stock note for an assessment made in April 1896, was not barred by limitation in August, 1905.

A. S. BRANDIES and HENRY BURNETT for appellee.

The action in this case is upon the assessment and the five-year statute applies to it. The case was begun in 1905, the assessment was made and notice given May 1, 1896. More than five years had elapsed and the action was barred before it was begun.

### AUTHORITIES CITED.

Otterview's Land Company's Receiver v. Bolling's Extx., 24 Ky. Law Rep. 1157, 70 S. W. 834; New York Statute, sec. 113.

It has been uniformly held by the New York court of appeals that the assessment creates the cause of action in cases like the one at bar, and, consequently our five-year Statute of Limitations governs the case.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

The Equitable Mutual Fire Insurance Company of New York is a mutual fire insurance company organized under the laws of that State. On March 6, 1894, Logan C. Murray executed the following note to that

company: "87.   $400.00.   Capital Stock Note of the
Equitable Mutual Fire Insurance Corporation of New
York.   New York, March 6, 1894.   On demand I prom-
ise to pay to the order of the Equitable Mutual Fire
Insurance Corporation, at its offices in the city of New
York, the sum of four hundred dollars, value re-
ceived.   Payment hereof is subject to the conditions
and obligations of the insurance law of the State of
New York (chapter 690, Laws of 1892) and the by-
laws of the said corporation printed on the back of
this note.   (Signed) L. C. Murray, 291 Broadway,
New York."   On April 9, 1894, Murray took out a
policy of insurance in the sum of $2,500 in said cor-
poration.

The provisions of the insurance law referred to in
the note copied above are as follows:

"Sec. 113. All capital stock notes of any domestic
mutual fire insurance corporation shall remain as se-
curity for all losses and claims, until the accumula-
tion of profits invested as required by law shall equal
the amount of cash capital required to be pos-
sessed by stock fire insurance corporations, the liabil-
ity of each note decreasing proportionately as the
profits are accumulated.   Any note which may have
been deposited with any mutual fire insurance cor-
poration subsequent to its organization in addition
to the cash premium on any insurance effected with
such corporation may at the expiration of the time of
such insurance, be relinquished and given up to the
maker thereof or his representative, upon his paying
his proportion of all losses and expenses which may
have accrued thereon during such term.   The directors
of any such corporation shall have the right to deter-
mine the amount of the note to be given in addition
to the cash premium by any person insured therein,

but in no case shall the note be more than five times the whole amount of the cash premium, and every person effecting insurance in any mutual fire insurance corporation, and his heirs, executors, administrators and assigns continuing to be so insured, shall thereby become members of the corporation during the period of insurance and shall be bound to pay for losses and necessary expenses accruing in and to such corporation in proportion to the amount of his deposit note or notes.''

''Sec. 115. Every person becoming a member of any domestic mutual fire insurance corporation by effecting insurance therein, shall before he receives his policy, deposit his promissory note for such a sum of money as shall be determined by the directors of the corporation. Such part of such note, not exceeding twenty per cent, as shall be required by the by-laws of the corporation, shall be immediately paid, and the remainder of such deposit note shall be payable in whole or in part, as the exigencies of the corporation shall require for the payment of losses by fire and incidental expenses of the corporation. At the expiration of the term of insurance such note, or the part thereof which shall remain unpaid after receiving thereon from the maker a proportionate share of all losses or expenses occurring during such term, shall be relinquished by the corporation to the maker, and the corporation may loan such portion of the money received upon any such note or from any such member as may not be immediately wanted for its use, if the same shall be secured by a bond and a mortgage on unincumbered real property of double the value of the sum loaned.

Sec. 116. The directors shall as often as they deem necessary, after receiving notice of any loss or dam-

age by fire sustained by any member, and ascertaining the same, or after the rendition of any judgment against the corporation for loss or damage, settle and determine the sums to be paid by the several members thereof as their respective proportion of such loss, and publish the same in such manner as they shall see fit or as the by-laws shall have prescribed. The sum to be paid by each member shall always be in proportion to the original amount of his note or notes, and shall be paid to the officers of the corporation within thirty days next after the publication of such notice. If any member shall, for the space of thirty days after such publication and after personal demand for payment shall have been made, neglect, or refuse to pay the sum so assessed upon him, the directors may sue for and recover the whole amount of his note or notes, with costs of suit, but execution shall only issue for assessments, and costs as they accrue, and every such execution shall be accompanied by a list of the losses for which the assessment is made. If the whole amount of the notes shall be insufficient to pay the loss occasioned by any fire or fires, in such case the sufferers insured by the corporation shall receive, toward making good their respective losses, a proportional share of the whole amount of such notes according to the sums by them respectively insured. No member shall ever be required to pay for any loss occasioned by fire or inland navigation more than the whole amount of his note. Any such corporation may receive from any person applying for insurance, in lieu of a deposit note, the whole amount in cash for the premium therefor, without subjecting such person to any other or additional liability, or in any way impairing or

changing the obligation of the corporation or effecting the rights of any person interested therein.''

The by-laws of said corporation, printed on the back of the note, are as follows:

''In case it shall be necesary for the payment of losses or such incidental expenses as may be neces·sary for transacting the business of the corporation, the board of directors shall, at any regular or special meeting, determine the amount of assessment that shall be made upon the capital stock notes of the corporation. They shall make such assessment and settle and determine the sums to be paid by the several members of the corporation as their respective portion of such loss shall be in proportion to the original amount of his note or notes; and thereupon the secretary shall notify in writing each maker of such note of the amount due thereon under such assessment. The amounts so due shall be paid to the officers of the corporation within thirty days after the mailing of said notices.''

On September 11, 1895, L. C. Raegner was appointed receiver of the Equitable Mutual Fire Insurance Corporation of New York. He thereupon executed bond and took charge of the assets of the corporation. Thereafter Raegner proceeded to ascertain and fix the liabilities and assets of the corporation. The liabilities were fixed at $86,834.87. The only assets the corporation had were capital stock notes amounting in the aggregate to the sum of $160,000. On April 30, 1896, the receiver made and levied an assessment of 60 per cent of the face value of each of the capital stock notes, including the note of Logan C. Murray. On May 1, 1896, notice of such assessment and of the amount due was given to Murray. On December 26, 1900, a further assessment of 40

per cent was made by the receiver, and notice of this assessment given to Murray.

This action was instituted July 18, 1905, by Raegner, as receiver of the Equitable Mutual Fire Insurance Corporation, against the defendant, Logan C. Murray, on the note above set out, to collect the sum of $240, with interest from the 1st of May, 1896, and for the sum of $160, with interest from December 26, 1900. The defendant answered in five paragraphs. The first and second contain denials of certain allegations of the petition. The third pleaded that the writing sued on was executed without any consideration. The fourth contained a plea of fraud. In paragraph 5 the defendant pleaded the statute of limitations as to the first assessment of 60 per cent, charging that said assessment became due on May 1, 1896, when defendant received notice of said assessment, and that more than five years had elapsed prior to the institution of this action. By amended answer Murray made the further defense that he was only liable for 1-400 part of the liabilities of the corporation, and that in no event was he liable for any shrinkage in the assets of the corporation. Plaintiff filed a reply, pleading that a plea of no consideration, or of fraud, was not available as a defense to the note in question under the laws of the State of New York, and in his pleading set forth several decisions of the courts of that State. Demurrers were filed to the various paragraphs of the petition and to the amended answer and reply. The court overruled defendant's demurrer to plaintiff's reply. Judgment was then given in favor of plaintiff, against defendant, for $160, with interest from January 25, 1901. From this judgement the receiver appeals, and defendant, Murray, also prosecutes a cross-appeal.

The first question is: Was the court right in holding that the five-year statute of limitations applied to the first assessment? To determine this question, we must ascertain whether or not the defendant's liability was founded upon a contract in writing, or upon a contract not in writing. Certainly no liability attached, so far as the note was concerned, until the assessments were properly made and the required notice given to the maker of the note. When these assessments were properly made, and proper notice thereof given, then the note was a written obligation on the part of defendant to pay the assessments. This is not a case where one subscribes for stock without executing any written obligation to the company. In such a case no liability would attach until the calls or assessments were properly made, and each separate call would constitute a distinct cause of action. This principle is recognized in the cases of Dorsheimer v. Glenn, 51 Fed. 404, 2 C. C. A. 309, and Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184, cited by counsel for appellee. Counsel contend that the rule laid down in these cases is conclusive of this case, for the reason that the stock note executed by the defendant is in effect a subscription for stock. It is true that it is a subscription for stock, but it is a written subscription. Defendant's liability is not based on the call alone, but is founded on his written promise to pay. The note sued on was a direct promise on the part of the defendant to pay when the assessments were properly made and due notice thereof was given. The fact that the assessments had to be made before any liability attached did not change the the nature of defendant's obligation. His written obligation to pay was not changed into a contract not in writing merely because it did not mature until

some act had to be done by the corporation. Plaintiff's cause of action was founded upon the note. It was a direct suit upon the note. This note was the defendant's promise in writing to pay the assessments properly made by the corporation. Plaintiff's action being founded upon the note, it necessarily follows that the statute of 15 years, and not of 5 years, applies. That being the case, it is unnecessary to determine whether the time the assessments fall due is controlled by the New York statutes or the by-laws printed on the back of the note. In either event plaintiff's cause of action upon the first assessment was not barred.

The note in question was executed in the State of New York and was made payable therein. It is therefore a New York contract, and its validity should be determined by the laws of that State. In that State the defenses interposed by the defendant are not available. The foundation of the New York rule is that, where one of two persons must suffer by the fraud of a third person, the loss should fall upon him who first gave the credit. This view of the law conforms to ours. When a party has enjoyed insurance, and the rights of others, who have based their action upon his conduct, would be prejudiced by his escape from liability, he should not then be permitted to offer a plea of fraud or want of consideration. Regener, Receiver, v. Hubbard (Sup.), 56 N. Y. Supp. 173; Raegener, Receiver, v. Hubbard, 16 7N. Y. 301, 60 N. E. 633; C., C. & St. L. R. R. Co. v. Druein, 80 S. W. 778, 26 Ky. Law Rep. 103, 66 L. R. A. 275; Van Matre v. Sankey, 148 Ill. 536, 36 N. E. 628, 23 L. R. A. 665, 39 Am. St. Rep. 196; Lane v. Watson, 51 N. J. Law, 186, 17 Atl. 117; Green v. Neal's Lessee, 6 Pet. 298,

8 L. Ed. 402; Ball v. Anderson, 196 Pa. 86, 46 Atl. 366, 79 Am. St. Rep. 693; Cushing v. Perot, 175 Pa. 66, 34 Atl. 447, 34 L. R. A. 737, 52 Am. St. Rep. 835; Sleeper v. Norris, 59 Kan. 555, 53 Pac. 757; Shelby v. Guy, 11 Wheat. 361, 6 L. Ed. 495; Watson v. Lane, 52 N. J. Law, 550, 20 Atl. 894, 10 L. R. A. 784; Lewis on Statutory Construction (2d Ed.), section 315; American Digest, vol. 44 (Century Ed.), section 256.

Furthermore, it is the well-established rule, not only in New York, but elsewhere, that the receiver of an insolvent mutual insurance association may assess solvent members thereof to make up for the inability of insolvent members to respond to assessments. May on Insurance, section 559; Joyce on Insurance, sections 1253, 1275, 1303; Bangs, Receiver, v. Gray, 12 N. Y. 477; Susquehanna Mutual Fire Insurance Co. v. Jackenback, 115 Pa. 492, 9 Atl. 90; Seaman v. Mutual Insurance Co., 90 Wis. 490, 63 N. W. 1059; Davis v. Shearer, 90 Wis. 250, 62 N. W. 1050; Wardle v. Townsend, 75 Mich. 385, 42 N. W. 940, 4. L. R. A. 511.

For the reasons given, the judgment is reversed on the original appeal, and affirmed on the cross-appeal, and cause remanded for proceedings consistent with this opinion.